E. G. SHINNER & COMPANY, INC., Appellant, vs. WRABETZ and others (WISCONSIN LABOR RELATIONS BOARD), Respondents: INDEPENDENT UNION OF SHINNER'S WISCONSIN EMPLOYEES ASSOCIATION and MILWAUKEE MEATCUTTERS, BUTCHERS & CLERKS UNION, LOCAL No. 1, Intervenors and Appellants: AMALGAMATED MEATCUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, LOCAL UNION No. 73, Intervenor.

WISCONSIN LABOR RELATIONS BOARD, Respondent, vs. E. G. SHINNER & COMPANY, INC., Appellant. (Same Intervenors.)

*April 11—June 20, 1940.*

196

198

For the appellant E. G. Shinner & Company, Inc., there were briefs by *Karon & Weinberg* of Milwaukee, and oral argument by *Morris Karon*.

For the appellants Independent Unions there was a brief by *Leslie G. Keller* of Milwaukee.

For the respondent state of Wisconsin there were briefs by the *Attorney General* and *N. P. Feinsinger,* special assistant attorney general, and oral argument by *Mr. Feinsinger.*

*David Beznor* of Milwaukee, for the intervenor, Amalgamated Meatcutters & Butcher Workmen of North America, Local Union No. 73.

MARTIN, J. The complaint of the board in substance alleges: (1) That the company had initiated, created, dominated, and interfered with the formation and administration of an organization of its employees known as the Independent Union of Shinner's Wisconsin Employees Association, also known as Shinner's Wisconsin Employees Association, in violation of sec. 111.08 (2), Stats. 1937, and (2) that the company had interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed in sec. 111.07 in violation of sec. 111.08 (1). Sec. 111.08 (2), provides that it shall be an unfair labor practice for an employer:

"(2) To initiate, create, dominate or interfere with the formation or administration of any organization of employees or contribute financial or other support to it, provided that an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay, and provided that nothing in this chapter, or any other chapter, or in any code or agreement approved or prescribed by law, shall prevent an employer from entering into an 'all-union agreement.' as hereinbefore defined, with a labor organization or labor organizations."

Sec. 111.07, Stats. 1937, provides:

"Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection. Nothing con-

tained herein shall be deemed to prevent an employer from entering into an 'all-union agreement,' as hereinbefore defined, with a labor organization or labor organizations."

Sec. 111.08 (1), Stats. 1937, provides that it shall be an unfair labor practice for an employer:

"(1) To interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 111.07."

The specific findings made by the board as to the company's alleged violations of the foregoing statutes are as follows:

"(4) That the respondent [company], through its officers and executive agents, by advice, attendance at organizational meetings and otherwise participated in the creation of the Association [independent union] in 1934.

"(5) That from the time the Association was created in 1934, to April 15, 1937, the effective date of the Wisconsin Labor Relations Act, the respondent, through its officers and executive agents, participated in the management and operations of the Association, by membership in and attendance at meetings of said Association and otherwise, and assisted in maintaining and financing the Association, by donating office and meeting space and otherwise.

"(6) That neither on April 15, 1937, nor for some time thereafter, did respondent take any overt action, by public announcement, meeting with the Association or its officers, or otherwise, to cease participating in the management and operations of the Association, or to cease its assistance in maintaining and financing the Association.

"(7) That despite the elimination of certain improper aspects, the relations between the respondent and the Association have remained substantially unchanged since their inception, and the respondent has continued to and does now dominate, influence and control the Association.

"(8) That a 'bargaining agreement' dated May 4, 1937, signed by the respondent and the Association provides that the respondent recognizes the Association 'as the sole bargaining agents on hours, wages, and working conditions for all its journeymen meatcutter members in the employ of the corporation [company] in the state of Wisconsin,' said agree-

ment to be automatically renewed for one year in the absence of thirty days' notice to the contrary.

"(9) That the Association, by virtue of the circumstances of its creation and the continued domination, influence and control of the respondent, is not capable of acting as an effective representative of respondent's employees for the purposes of collective bargaining.

"(10) That the continued recognition of the Association as the collective-bargaining representative of respondent's employees has interfered with and continues to interfere with the right of such employees to self-organization and collective bargaining through representatives of their own choosing."

The conclusions of law and the order of the board are in conformity with the foregoing findings, and we do not deem it necessary to make same a part of this opinion.

Appellants contend that there is no evidence to sustain the board's findings. Sec. 111.10 (5), Stats. 1937, so far as here material, provides: "The findings of the board as to the facts, if supported by evidence in the record, shall be conclusive." Before referring to the evidence, we deem it advisable to state the rule which should be applied in testing the sufficiency of the evidence to sustain the findings.

In *Wisconsin Labor R. Board v. Fred Rueping L. Co.* (1938) 228 Wis. 473, 279 N. W. 673, the court held that the extent of the review under the Wisconsin Labor Relations Act is the same as that under the Workmen's Compensation Act, and that if supported by the evidence in the record, the findings shall be conclusive.

The National Labor Relations Act and the Wisconsin Labor Relations Act of 1937 have the same provision, namely, "The findings of the board as to the facts, if supported by evidence . . . shall be conclusive." In *Consolidated Edison Co. v. National Labor Relations Board* (1938), 305 U. S. 197, 229, 59 Sup. Ct. 206, 83 L. Ed. 126, the court said:

"We agree that the statute, in providing that 'the findings of the board as to the facts, if supported by evidence, shall be

conclusive,' means supported by substantial evidence. [Citing cases.] Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

In *National Labor Relations Board v. Columbian Enameling & Stamping Co.* (1939) 306 U. S. 292, 299, 59 Sup. Ct. 501, 83 L. Ed. 660, the court said:

" 'The findings of the board as to the facts, if supported by evidence, shall be conclusive.' But as has often been pointed out, this, as in the case of other findings by administrative bodies, means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. [Citing cases.]"

To the same effect, see *National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Co.* (1939) 308 U. S. 241, 60 Sup. Ct. 203, 84 L. Ed. 219. The foregoing rule is also approved by this court in *Folding Furniture Works v. Wisconsin L. R. Board* (1939), 232 Wis. 170, 285 N. W. 851, 286 N. W. 875; *Jasperson v. Industrial Comm.* (1939) 231 Wis. 142, 146, 285 N.W. 391; *State Young Men's C. Asso. v. Industrial Comm., ante,* p. 161, 292 N. W. 324.

It appears that the company owns and operates five meat markets in the city of Milwaukee and employs between thirty-five and forty people. The Independent Union of Shinner's Wisconsin Employees was organized in August, 1934, more than two years before the effective date of the Wisconsin Labor Relations Act. For sometime preceding its formation, the company employees had a social club and held monthly meetings. The local managers of the company stores were invited to attend these meetings. All the testimony is to the effect that it was through the social meetings of the employees that the independent union came into existence. The store managers are not members of the independent union and do not attend the union meetings which are held once a month.

Mr. E. G. Shinner is the president of the company, Mr. Anderson is vice-president, and A. H. Russell is the secretary-treasurer. It appears that when the company employees were about to form a union, some of the employees asked for a copy of a constitution and by-laws. This was furnished by Mr. Anderson. The employees also obtained several copies of the constitutions and by-laws of different labor organizations, from which they formulated their constitution and by-laws.

Bert Wolf, president of the independent union, testified in substance as follows: That he had been employed by the company since 1923; that he helped found the union and draft its constitution and by-laws; that the union was the outgrowth of the employees' social organization; that the union has a council consisting of one employee from each of the company's stores; that all the regular employees belong to the independent union but that they are not required to become members; that the union meets once a month; that the store managers do not participate in and never attend a union meeting; that none of the officers of the company told the employees to form a union or told them the kind of a constitution or by-laws they should have; that the employees were never coerced or influenced by any of the officers or representatives of the company as to forming or not forming a union. He further testified that he had been a member of a butchers' union before he joined the independent union; that there were three or four butchers' unions in the city that went broke; that those butchers' unions were all broke and they had to start all over again; that they (the company employees) figured that they should have a union of their own that would stand up and that is why they formed the independent union.

Mr. A. J. Sokoloski, business agent for the independent union, testified in substance that he had been president of the union for three years and was active in its formation; that the union copied its constitution and by-laws from the consti-

tution and by-laws of the American Federation of Labor and several other labor organizations; that the company in 1934, in celebration of its twentieth anniversary, gave the employees a dinner; that this led to a good-fellowship club which later developed into the formation of the employees' independent union; that they got their ideas about collective bargaining from the by-laws of labor organizations and from the propaganda about unionism; that he drafted the employment contract between the company and the union with the help of similar contracts from several other unions; that from the time the union was organized in 1934, they had an oral understanding with the company as to wages, apprentices, and hours; that their hours were always shorter than those of other employees in like employment in the city of Milwaukee; that the company never violated its agreement with the union.

It appears that on May 4, 1937, a written agreement was entered into between the company and the independent union. In explanation of why the written agreement was made at that time, Mr. Sokoloski testified that the American Federation of Labor union was creating disturbances and trying to force the company employees to join their organization; that because of this agitation and disturbance, they decided that they wanted something a little more binding; that they wanted a guarantee as to employment and wages for a definite period.

Mike Dropp, who has been manager of the company stores in Milwaukee for over twenty years, testified that he had nothing to do with the forming of the independent union, that the employees had never talked to him about it, and that he never attended any union meetings. He further testified that the union rented the basement of the Mitchell street store for their meeting place, for which the company charged the union $5 a month rental.

It appears that in April, 1935, the American Federation of Labor commenced picketing the company's Milwaukee

stores. This caused considerable disturbance, resulting in litigation in the federal courts which finally reached the United States supreme court (see *Lauf v. E. G. Shinner & Co.* (1938) 303 U. S. 323, 58 Sup. Ct. 578, 82 L. Ed. 872). During the period of picketing disturbances, the independent union caused certain advertisements to be inserted in some of the Milwaukee newspapers at a cost of $277.12. There is a suggestion in the board's brief that possibly the company paid for these ads. However, there is positive uncontradicted testimony that the independent union borrowed $250 of this amount and gave a note therefor, payable in eighteen months. The party who borrowed the money and the party who made the loan so testified.

A further circumstance which the board relies upon to establish company control and domination of the independent union is the fact that the union took steps to intervene in the federal court action. And, in this connection, the members of the union, all being employees of the company, held a special meeting at the company's Third street store—which was not the union's regular meeting place, without payment of rent. Another circumstance which the board contends shows company control and domination of the independent union is the fact that in one instance, an employee of the company was solicited for membership by the union on the premises of the company. Another is the fact that trips were made by Sokoloski to organize the employees of the company store in Beloit and in certain cities in Michigan, which trips were made by Sokoloski in July of 1937 during his vacation period and in September during the time he had a leave of absence. The Beloit employees joined the Independent Union of Shinner's Wisconsin Employees. These trips were made without expense to the company, and according to the uncontradicted evidence, were paid by the union.

Another circumstance is the fact that for a time the cashiers of the company stores at Milwaukee deducted the union

dues from the wages of the employee members of the union. This arrangement, while it lasted, existed without the knowledge or consent of the store managers or of any of the company officers. As heretofore stated, the union had a council representative in each of the company stores. The testimony is to the effect that each councilman arranged with the person acting as cashier in each of the stores, with the consent of the employee members of the union, to deduct fifty cents per month from each employee's wages and turn same over to the councilman.

The record discloses that twenty-eight of the company employee members of the union, in oral testimony given at the different hearings before the board's examiner or in affidavit form, submitted and received in evidence, denied that the company or anyone in its behalf attempted to dominate, influence, or interfere in the administration of the affairs of the independent union; that the company never participated in or supervised the conduct of the union's management, its operations, or elections. They further testified that the relationship between the employee members of the independent union and the company had always been mutually satisfactory and peaceful; that any differences that arose between the employees and the company were satisfactorily adjusted by the union representing such employee or employees. They all testified that they had free choice in the matter of labor organization and were informed by company officials back in 1934 when they were considering forming a union, that they could join any labor union they desired.

We have possibly prolonged this opinion beyond the limits of useful purpose in setting out the evidence. We have carefully examined all the evidence and considered every circumstance upon which the board relies for support of its findings and order, and we are of the opinion that there is no evidence in the record to sustain the findings.

Appellants vigorously contend that the Wisconsin Labor Relations Act is unconstitutional for the reason that under the act the board is made investigator, complainant, prosecutor, and judge. Obviously evils are inherent where the one body is given such powers. However, in view of the conclusion indicated above, and the further fact that the Labor Relations Act of 1937 has been repealed and succeeded by the new Labor Relations Act of 1939, we do not deem it necessary to decide this question.

There are some additional questions discussed in the briefs of counsel, but since the final result must depend on whether the evidence is sufficient under the authorities above quoted to sustain the findings, we see no occasion to consider further questions. The case of the board for the enforcement of its order falls.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment vacating and setting aside the findings of fact, conclusions of law, and the order entered by the Wisconsin Labor Relations Board on December 12, 1938.

WICKHEM, J. (*dissenting*). After careful consideration of the entire record in this case, I am of the view that the chain of circumstances recited in the opinion of the court constitutes evidence having a reasonable tendency to prove the facts as found by the labor board. It may well be that the findings are not supported by any preponderance of the evidence, but under familiar and well-established rules this is of no materiality. As to issues raised in the case and not treated in the opinion I express no opinion.

I am authorized to state that Mr. Chief Justice ROSENBERRY and Mr. Justice FRITZ concur in this opinion.