STATE, Appellant, v. LAMPING, Respondent.

*September 11—October 3, 1967.*

330

For the appellant the cause was argued by *Robert B. McConnell,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief and oral argument by *Orville S. Luckenbach* of Shawano.

CURRIE, C. J.  These issues are presented by the instant appeal:

(1)  Does the circuit court's memorandum decision constitute an appealable order?

(2)  Did the circuit court have jurisdiction to receive additional evidence?

(3)  On remand to the circuit court, will that court be authorized to remand to the commission for the purpose of permitting defendant to adduce further evidence?

(4)  Is there credible and competent evidence in the record to support the commission's finding that the point was a floating bog?

*Appealability of Circuit Court Decision.*

While the parties have not raised the issue of whether the circuit court's memorandum decision constitutes an appealable order, the parties cannot by failure to raise the issue confer jurisdiction upon this court to review an order that is not appealable.[2]

The instant enforcement proceeding was instituted in circuit court pursuant to sec. 30.03 (4) (a), Stats.[3] This statute incorporates by specific reference sec. 111.07 (7). The effect of such specific reference is the same as if the incorporated section was set forth verbatim and at length therein.[4]

Sec. 111.07 (7), Stats., provides not only for the enforcement of an order but for the judicial review of an order. The only appeal from the court's judgment and decree in such proceeding shall be to this court. Thus, there is no ch. 227 judicial review via sec. 196.41. Since a review pursuant to secs. 227.15 to 227.20, inclusive, has been held to be a special proceeding,[5] it is only con-

---

[2] *Mitler v. Associated Contractors* (1958), 3 Wis. 2d 331, 333, 88 N. W. 2d 672.

[3] Sec. 30.03 (4) (a), Stats., provides: "Whenever there comes to the attention of the commission a possible violation of the statutes relating to navigable waters, or a possible infringement of the public rights therein, and it appears to the commission that the public interest may not be adequately served by imposition of penalty or forfeiture, the commission may proceed as follows, either in lieu of or in addition to such other relief as may be provided by law. The commission may, upon at least 10 days' notice, conduct a hearing respecting such violation or infringement, pursuant to ch. 227 and issue an order directing the parties responsible therefor to perform or refrain from performing such acts as may be necessary to fully protect and effectuate the interests of the public in the navigable waters. . . . Such proceedings shall be brought in the manner and with the effect of proceedings under s. 111.07 (7)."

[4] *Union Cemetery v. Milwaukee* (1961), 13 Wis. 2d 64, 67, 108 N. W. 2d 180; *Wauwatosa v. Milwaukee* (1951), 259 Wis. 56, 47 N. W. 2d 442.

[5] *Ashwaubenon v. Public Service Comm.* (1962), 15 Wis. 2d 445, 448, 113 N. W. 2d 412; *Baker v. Department of Taxation* (1947),

sistent to hold that a sec. 30.03 (4) (a) enforcement proceeding is a special proceeding.

"A final order affecting a substantial right made in special proceedings" is expressly made appealable by sec. 274.33 (2), Stats.

A final order in a special proceeding is one which determines and disposes finally of the proceeding—one which, so long as it stands, precludes any further steps therein.[6] Here, the memorandum decision achieved the requisite finality.

This court has held that the final ruling of a court, even if incorporated in a memorandum decision, constitutes an order,[7] although it is preferable for the trial court to draft and enter a separate order. Thus there is a final order in a special proceeding, which has affected a substantial right. The order is appealable.

*Jurisdiction to Receive Additional Evidence.*

As previously pointed out herein, the provisions of sec. 111.07 (7), Stats., are made applicable to an enforcement proceeding, such as the instant proceeding, by sec. 30.03 (4) (a). Sec. 111.07 (7) provides in part as follows:

". . . Upon such hearing the court may confirm, modify, or set aside the order of the board and enter an appropriate decree. No objection that has not been urged before the board shall be considered by the court unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of fact made by the board, if supported by credible and competent evidence in the record, shall be conclusive. The court may, in its discretion, grant leave to adduce additional evidence where such evidence ap-

250 Wis. 439, 441, 27 N. W. 2d 467. Even though sec. 111.07 (7), Stats., refers to the proceeding as an "action," see *Wisconsin Hydro Electric Co. v. Public Service Comm.* (1940), 234 Wis. 627, 632, 291 N. W. 784.

[6] *Kingston v. Kingston* (1905), 124 Wis. 263, 264, 102 N. W. 577.

[7] *Estate of Baumgarten* (1961), 12 Wis. 2d 212, 220, 221, 107 N. W. 2d 169.

pears to be material and reasonable cause is shown for failure to have adduced such evidence in the hearing before the board. The board may modify its findings as to facts, or make new findings by reason of such additional evidence . . . ."

This court has clearly held that sec. 111.07 (7), Stats., does not authorize the taking of additional evidence by the circuit court. That court's power is limited to granting a party leave to adduce additional evidence before the commission. The circuit court must confine itself to the record in a sec. 111.07 (7) enforcement proceeding.

As stated in *Wisconsin Employment Relations Board v. Allis-Chalmers Workers' Union:* [8]

". . . In proceeding to take further evidence the court acted in excess of and beyond its jurisdiction. If the court was of the view that either of the parties was entitled to present further evidence it should, in accordance with the language of the statute [sec. 111.07 (7)], have remanded to the board for further proceedings. The statute does not authorize the taking of additional evidence by the court. If additional evidence is to be adduced it must be adduced before the board, and the court was in error in proceeding as it did. . . ."

The circuit court misconstrued sec. 111.07 (7), Stats., as authorizing the adducing of additional evidence before the court rather than the commission. As a result a substantial amount of evidence was adduced before the court in the enforcement proceeding. This court has held that a trial court exceeded its jurisdiction under sec. 111.07 (7) by having received into evidence in an enforcement proceeding a single affidavit. [9]

Because the circuit court exceeded its jurisdiction in permitting additional evidence to be offered before it, its order grounded in part on this evidence must be reversed and the cause remanded.

[8] (1948), 252 Wis. 436, 440, 31 N. W. 2d 772, 32 N. W. 2d 190.
[9] *Wisconsin Employment Relations Board v. J. P. Cullen & Son* (1948), 253 Wis. 105, 33 N. W. 2d 182.

*Authority of Circuit Court to Remand to Commission
for Adducing Additional Evidence.*

Sec. 111.07 (7), Stats., expressly authorizes the circuit court in its discretion to grant leave for the adducing of additional evidence before the commission "where such evidence appears to be material and reasonable cause is shown for failure to have adduced such evidence in the hearing . . . ."

The attorney general contends that defendant is barred from being accorded the right to adduce further evidence before the commission because no request to be permitted to do so was made to the circuit court prior to the scheduled hearing in that court. He contends that sec. 111.07 (7), Stats., should be interpreted as embodying the same requirement as sec. 227.19 (1). The latter statute provides that application to present additional evidence before the agency must be made "before the date set for trial." [10]

Prior to the enactment of the Wisconsin Administrative Procedure Act (ch. 227), sec. 111.07 (8), Stats., provided for a judicial review which was to be conducted in the same manner as sec. 111.07 (7). [11] Sec. 111.07 (8) was repealed in 1943 as one of the subsections intended to be superseded by ch. 227. [12] It was recreated to read, as it does today:

"The order of the board shall also be subject to review in the manner provided in chapter 227, except that the place of review shall be the circuit court of the county in which the appellant or any party resides or transacts business."

[10] For a case holding that a request for leave to present additional evidence before the agency was not timely made under sec. 227.19 (1), Stats., *see Lakeland v. State Department of Public Welfare* (1953), 265 Wis. 321, 61 N. W. 2d 477.

[11] Sec. 111.07 (8), Stats. 1941.

[12] Ch. 375, sec. 46, Laws of 1943.

Ch. 227, Stats., was drafted by the Committee on Administrative Tribunals of the State Bar Association, of which Mr. Ralph Hoyt was chairman. The committee found it necessary to change over some 70 separate statutes prescribing methods of review. Mr. E. E. Brossard, then Revisor of the Wisconsin Statutes, wrote Mr. Hoyt a letter in 1943 suggesting that the committee's proposed bill had overlooked sec. 111.07 (7). On April 3, 1943, Mr. Hoyt wrote Mr. Brossard that sec. 111.07 (7) was not to be affected by ch. 227, because sec. 111.07 (7) concerned enforcement proceedings and not judicial review.[13]

Sec. 111.07 (7), Stats., says nothing about a party having to make a request for leave to present additional evidence prior to the hearing. It simply states that, ". . . The court may, in its discretion, grant leave . . . ."

Although, generally, a statute covering the subject matter of a former statute repeals it, it is a question of legislative intent.[14] Here, the intent was clear. Even though this provides an exception to the uniformity of judicial review of administrative actions, it was an intentional exception.

In *Wisconsin Employment Relations Board v. Allis-Chalmers Workers' Union Case,*[15] the party made no request for leave to present additional evidence until

[13] The April 3, 1943, letter from Mr. Hoyt to Mr. Brossard may be found in the drafting file for L. 1943, c. 375 in the Wisconsin Legislative Reference Bureau, State Capitol, Madison, Wisconsin. Reference may properly be had to the committee's intent in drafting the bill. *Minneapolis, St. P. & S. S. M. Ry. v. Industrial Comm.* (1913), 153 Wis. 552, 558, 141 N. W. 1119; *Pellett v. Industrial Comm.* (1916), 162 Wis. 596, 601, 156 N. W. 956.

[14] *Madison v. Southern W. Ry.* (1914), 156 Wis. 352, 359, 146 N. W. 492. There is no need to consider the rule that statutes *in pari materia* must be construed together, for the purpose of the rule is only to arrive at legislative intent. *State ex rel. Haswell v. Cram* (1863), 16 Wis. 365 (*343).

[15] Footnote 8, *supra.*

during the enforcement proceeding. (Appellant's brief, p. 12, citing pp. 250–252 of the record as set forth in appellant's appendix at pp. 240–242.) The appellants there made the same argument as to timeliness as the appellants do here. This court rejected that argument when it remanded the case in the following fashion:

"Upon the return of the record to the trial court it will be its duty to proceed in one of two ways. First, to determine upon the record made before the board whether the order of the board of December 26, 1946, should be confirmed, modified, or set aside. Second, if proper application is made under the provisions of sec. 111.07 (7), Stats., if the court, in the exercise of its discretion is of the opinion that further evidence should be taken, the matter should be referred to the board in accordance with the provisions of that subsection." [16]

Therefore, the circuit court upon remand of the cause pursuant to our mandate herein is authorized to proceed in similar fashion.[17] Under the facts of this record we determine that it would not be an abuse of discretion for the circuit court to hold that reasonable cause exists for defendant's failure to have adduced additional evidence before the commission.

*Credible and Competent Evidence to Support the Finding of Floating Bog.*

Inasmuch as it will lie within the discretion of the circuit court whether to remand to the commission for the adducement of further evidence, there exists the possibility that the circuit court may refuse defendant's request so to do. Because of this contingency we deem it advisable to pass on the issue of whether there exists

[16] *Id.* at page 443.

[17] The right of the circuit court to remand for the taking of additional evidence before the commission without a request being made prior to hearing is practically conceded by the attorney general's letter to defendant of May 6, 1965, which constitutes Exhibit A of the record.

sufficient credible and competent evidence adduced before the commission's examiner to sustain the finding of floating bog.

Sec. 111.07 (7), Stats., provides:

". . . The findings of fact made by the board, if supported by credible and competent evidence in the record, shall be conclusive . . . ."

The commission expressly found that the Lamping point was a floating bog and not riparian upland. These findings cannot be disturbed by a court, "unless they are unsupported by substantial evidence in view of the entire record submitted." [18] This court, however, has also stated in relation to this provision of sec. 111.07 (7), Stats., " '. . . Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " [19]

The commission's findings must be read in light of the fact that this court has defined a floating bog. In *Attorney General ex rel. Becker v. Bay Boom Wild Rice & Fur Co.*[20] the court held that floating bogs were not land and that they did not prevent the water on which they floated from being classified navigable water, where large expanses of the area in ordinary stages of water were in fact navigable. This court stated:

". . . In fact, however, floating bog is a mass of grass, reeds, and other aquatic vegetation which grows and floats on the surface of water in warm weather, which may become frozen into the ice during the winter, and upon the recurrence of high stages of water is carried

---

[18] *St. Joseph's Hospital v. Wisconsin Employment Relations Board* (1953), 264 Wis. 396, 402, 59 N. W. 2d 448.

[19] *E. G. Shinner & Co. v. Wrabetz* (1940), 235 Wis. 195, 203, 292 N. W. 902. *See also Copland v. Department of Taxation* (1962), 16 Wis. 2d 543, 553–555, 114 N. W. 2d 858, and *Hixon v. Public Service Comm.* (1966), 32 Wis. 2d 608, 629, 630, 146 N. W. 2d 577.

[20] (1920), 172 Wis. 363, 370, 371, 178 N. W. 569.

on its surface, is broken off, and may be moved by the winds and currents to deep waters, where it is ground to shreds and disappears as sediment on the bed of the water. When it so floats and before it is so destroyed and deposited on the water bed, *it is in no sense soil or land.* Wherever it forms in the summer season it indicates that *there is a substantial amount of water between it and the soil forming the bed of the water. . . ."* (Emphasis supplied.) [21]

The attorney general in his reply brief states that such definition was a mere recitation of the factual situation of that case. Although it is true that the court seems to have drawn its definition from the testimony of one engineer who testified in the lower court proceedings, the language used by the court is not limited to the facts. It does not say "this floating bog" or "the floating bog," but rather "In fact, however, floating bog is . . . ."

This definition seems to contemplate something less substantial than was involved in this case. The record of the proceedings before the commission reveals that the point has existed at its present location for more than fifty years, that people could walk on it, that at times there have been a duck blind and a skeet-shooting outfit on it, and that trees grew upon it.

However, the biologist from the Wisconsin conservation department testified, "It is the floating bog common in many Wisconsin lakes. It contains cedar, sphagnum, leather leaf and alders. The portion on which there was no mineral soil on the date [Oct. 16, 1963] these pictures were taken literally floated." He also stated:

"In order to prepare myself to testify here today I reviewed a text on vegetation by John T. Curtis entitled 'Vegetation of Wisconsin', a publication of the University of Wisconsin press published in 1959. Dr. Curtis' portrayal of sphagnum mats and floating bogs, particularly pages 235. . . .

" . . .

---

[21] *Id.* at pages 370, 371.

"All I am saying is that I have reviewed the testimony of this professor of botany, a recognized text, and it substantiates my opinion in terms of plants that this is a floating bog. The floating bog that he described is substantially identical with what I saw here."

The attorney general in his brief quotes from pages 235–237 of Professor Curtis' work. Both he and the expert witness rely on a section that is found in ch. 12— *Northern Forests, Lowland.* There is no mention of ch. 18—*Fen, meadow, and bog,* particularly pages 378–384. On page 383, Professor Curtis states:

". . . sphagnum bogs are one stage in the primary hydrosere succession from open-water lake, to conifer swamp, and eventually to climax mesic hardwood forest. The stage is very long lived. . . .

". . . the bog frequently originates on a floating mat. . . .

"In the absence of disturbance, the bog mat gradually thickens, fills the entire lake bed, and becomes solidified in the process . . . Sooner or later, it is likely to be invaded by tamarack and black spruce, which rather quickly transform the area to a *swamp forest.*" (Emphasis supplied.)

Ch. 12 of the work indicates that the invasion of cedar trees (as present on the Lamping point) is an even later stage. The work also indicates that even inland bogs are quite spongy with a tremendously high water-retaining capacity. Thus, all the testimony before the commission of people getting their feet wet while walking on the point is not conclusive that the bog floated. It would seem, then, that there is a stage at which a floating bog may become a bog or swamp, which would certainly have to be considered land.

We also consider that a further material factor to be considered, in determining whether the instant peninsula is floating bog or land, is the degree to which it is anchored or fastened to the underlying lake bed. If it is so securely anchored or fastened thereto that its surface

does not rise or fall with the raising or lowering of the lake's water level, it would not longer constitute floating bog.[22]

While the commission's finding that the peninsula is floating bog is not one that this court would have made on the evidence adduced before the examiner, we are compelled to hold that this finding is supported by the credible and competent expert opinion testimony of the conservation department's biologist.

*By the Court.*—The order is reversed and cause remanded for further proceedings consistent with this opinion.

---

[22] In the testimony adduced before the circuit court, it was brought out that a dam was constructed in 1949 at the outlet of the lake which substantially raised the level of the lake. If the circuit court does remand to the commission for the adducement of further testimony, it would seem imperative that this feature be examined further. If the portion of the peninsula above the water level remained the same after the raising of the lake level, it would indicate that the peninsula actually floated in 1949. This, however, would not be conclusive as to the present character of the peninsula because during the intervening years the bog may have metamorphosed into permanent swampland.