McCord vs. Flynn.

McCORD, Respondent, vs. FLYNN, Appellant.
SAME, Appellant, vs. SAME, Respondent.

*May 23 — June 20, 1901.*

*Arbitration and award: Interest in land: Powers of arbitrators: Modification and correction of award.*

1. An action having been brought for an accounting and to enforce an equitable claim to land under a contract by which plaintiff was to work for defendant upon a certain farm until it should be paid for by defendant and was then to receive a deed of one third of the farm, the parties submitted the controversy to arbitrators, and plaintiff, for the purposes of the arbitration, and finally if judgment should be entered on the award, waived all claim that such contract might give him to the farm and agreed to accept a money award only. *Held,* that such submission was not void under sec. 3545, Stats. 1898, which provides that "no such submission shall be made respecting the claim of any person to any estate in fee or for life to real estate."

2. The parties having further agreed, in the submission to arbitrators, that a judgment of the court in which the action was brought should be rendered upon the award, the arbitrators had power to order or determine that plaintiff should have judgment.

McCord vs. Flynn.

3. Where arbitrators have exercised, or attempted to exercise, their judgment upon the questions submitted to them, their award in respect thereto cannot be disturbed for mere error of judgment as to the law or the facts.

4. A contract provided that plaintiff should work for defendant upon a farm purchased by the latter until it should be paid for, and should then receive a deed of one third of the farm as compensation; also that all proceeds of the farm and all other lands owned by defendant, over and above the running expenses and the maintenance of defendant and his family and plaintiff, should be applied to payment for said farm. The respective claims of the parties under such contract were submitted to arbitrators, who determined that in an accounting defendant was not entitled to credit for services of his sister who lived with him as a member of his family. *Held*, that such determination was not subject to revision by the court.

5. But where such arbitrators, in making an award in plaintiff's favor of a sum intended to represent his interest in the farm, credited him with a share of fees received by defendant as town clerk during the continuance of the contract, the court properly modified the award by deducting the amount so credited, since that was a matter not covered by the contract nor submitted to the arbitrators.

6. As a general rule, after arbitrators have made and delivered their award they have no power to rejudge the case and alter such award; but the award may be corrected so as to allow one party a credit which by mere oversight the arbitrators at first omitted to allow; and an order of the court treating the award as so corrected will be regarded as an order so modifying it, under sec. 3553, Stats. 1898.

APPEALS from a judgment of the circuit court for Grant county: GEO. CLEMENTSON, Circuit Judge. *Affirmed on defendant's appeal; modified and affirmed on plaintiff's.*

During the times mentioned the defendant was a cripple, without the use of his lower limbs, but was able to do considerable work, and was very useful on the farm. For several years prior to June, 1893, when the plaintiff became of age, he had lived with and worked for the defendant. About the time the plaintiff became of age he and the defendant entered into a parol agreement in relation to the Taylor

McCord vs. Flynn.

farm. In December, 1895, such agreement was reduced to writing, and signed by the plaintiff and the defendant, under their hands and seals, in the presence of two witnesses, who subscribed their names thereto as such. Therein it was recited, in effect, that in April, 1894, the defendant bought the Taylor farm, therein described, paying therefor $1,000 down, and agreeing to pay therefor the further sum of $1,700, according to the terms of four certain promissory notes, the last of which was to become due on or before April, 1899, and whereas the defendant had adopted the plaintiff, therefore, for and in consideration of the sum of one dollar, and for the further consideration of the premises therein, it was thereby mutually agreed and understood by and between the parties thereto that if the plaintiff should faithfully, and in good, husbandlike manner, work for the defendant in and about the cultivation and tillage of the lands described, and of the lands in addition thereto owned by the defendant, and do all such work as was generally done by a farm laborer, and should, in addition to his own labor, furnish the defendant with one good work team, from the —— day of April, 1894, until the defendant should fully pay for the premises described according to the terms and conditions of the notes given therefor, then upon demand of the plaintiff, and without further costs or charges to him, the defendant thereby bound himself, his heirs, executors, administrators, and assigns, to give to the plaintiff, his heirs or assigns, a good and sufficient deed of conveyance of the undivided one-third of all the lands so described, bought as aforesaid by the defendant of C. F. Taylor; and the defendant thereby acknowledged that the plaintiff had fully performed the work required of him by the terms of the contract, up to and including the —— day of April, 1894; that it was further mutually agreed and understood, by and between the parties thereto, that the plaintiff was to receive such deed for the one-third interest in the place in full for all work

McCord vs. Flynn.

and labor he should perform for the defendant, and was to receive no wages whatever, except as thereinafter set forth; that all the proceeds of the lands described and also all the other lands then owned by the defendant, over and above the necessary running expenses, and over and above the maintenance of the defendant and his family and the plaintiff, was to be applied upon and for the payment of the lands described; that the defendant thereby agreed and bound himself, his heirs, executors, administrators, and assigns, to give to the plaintiff, his heirs or assigns, at the time of the completion of the contract, and at the time of the delivery of the deed to the plaintiff, a bill of sale of one third of all the cattle then owned by the defendant over and above the number of cattle which were owned by the defendant on the —— day of April, 1894, and the parties thereto thereby agreed and fixed —— as the number of cattle owned by the defendant on the date last above mentioned, the division of which was to be made equitably, according to their age and quality.

The plaintiff and defendant continued to carry on the farms under such agreement until June 19, 1899, when, owing to a disagreement, the plaintiff left. On August 30, 1899, the plaintiff commenced this action for an accounting under such contract, and for a transfer to the plaintiff of one third of the personal property, and a conveyance to him of one third of the Taylor farm, according to the terms of such agreement.

The defendant answered, to the effect that the statement in such agreement that the last note for the Taylor farm would become due April, 1899, was a mistake; that it should have been May 19, 1900; that there was still due and unpaid on the Taylor farm $1,485; that the net earnings of both farms had been insufficient to pay for the Taylor farm into about $1,200; that the defendant had, during the time mentioned, received $60 per year as town clerk, and the

McCord vs. Flynn.

same had been applied towards the payment of the Taylor farm; that there were not more than ten head of cattle on the farm in excess of what he had in April, 1894, and they were not marketable, and if sold would not bring to exceed $250; that the plaintiff had failed to perform the contract on his part, and had always failed and neglected to furnish any work team as provided in the contract; that the plaintiff had been unsteady and unreliable, and ran away for a week in the spring of 1897, without the defendant's consent; that July 1, 1899, the plaintiff refused to longer work for the defendant, against the defendant's objection, and left in violation of his contract, to the great damage of the defendant; that the purchase price of the Taylor farm was $2,700, and the $1,000 paid down was borrowed, and had to be repaid; that the plaintiff had always had his board, clothing, and spending money, and had not been worth any more.

During the trial of the cause, and pursuant to a suggestion from the bench, on November 7, 1899, the plaintiff and defendant entered into an agreement, in writing, to submit the matters in controversy between them to arbitrators, which agreement, with the recitals therein, is to the effect that whereas, the contract upon which the action was based was made in December, 1895, but was intended to relate back to the time when the plaintiff became of age, in June, 1893, according to his contention, but according to the defendant's contention was only to relate back to September, 1893, the original of which was filed in the action with the clerk of the court, November 6, 1899; that the court having heard some testimony in the case, and having then from the bench suggested to the parties that it was a case that ought to be compromised by them without further litigation, and the parties to the action having agreed to submit their respective claims under said contract to two arbitrators, namely, Joseph T. Lance, of Crawford county, and Evor Christianson, of Waterstown, they to be the sole arbitrators in this matter,

McCord vs. Flynn.

and to be governed as such arbitrators by the provisions of
ch. 153, Stats. 1898, it being a part of the submission that
the plaintiff, *Andrew McCord*, waives, for the purposes of
this arbitration, and finally if judgment be entered upon the
award made by such arbitrators, all claims that such con-
tract might give him to the Taylor farm therein mentioned,
and to accept only a money award in his favor for such sum
as, under such contract and the testimony given before them,
such arbitrators shall determine he should justly receive;
and that a judgment of the circuit court should be rendered
upon the award made pursuant to this submission, and that
said action then pending should remain in abeyance until
said arbitrators should make their award and judgment
should be rendered thereon, unless the court in this action,
by its order, should otherwise provide; and that upon the
rendition of said judgment said action should be abated and
dismissed without costs to either party, and that the costs
of the arbitration and incident thereto should be paid by the
parties, or one of them, as the arbitrators might determine,
and that the judgment upon the award should include costs
in accordance with the determination of the arbitrators;
such arbitrators to be sworn as provided by sec. 3547 in said
ch. 153, and to be in all respects governed by the provisions
of said chapter in their doings as arbitrators, and to be lim-
ited in what they do by the provisions of said chapter. It
was further agreed, as a condition of such arbitration, that
the witnesses to be sworn and examined before said arbitra-
tors should be limited to six on each side, in addition to the
parties to this controversy; that said arbitrators should meet
for the purpose of qualifying, and for such further business
as they might determine then to do regarding such arbitra-
tion. It further provided for the meeting of the arbitrators,
and that a copy of such submission be sent to each of them.
The arbitrators were duly sworn as thus required.

On December 27, 1899, the arbitrators made their award in writing, as follows (omitting title of the case):

"We, the undersigned arbitrators of the case above stated, did meet at the town hall in Boscobel on the 12th day of December, 1899, and did then and there proceed to hear the evidence offered by the plaintiff and defendant, both parties being present, and after carefully considering the evidence, and viewing the premises, stock, and improvements now in possession of the defendant, we find for the plaintiff, *Andrew McCord*, and determine that said plaintiff shall have judgment for ($1,092.17) one thousand ninety-two dollars and seventeen cents, and that the plaintiff and defendant shall each pay equal parts of all costs of this case, exclusive of attorney's fees.

"Dated December 27, 1899.        J. T. LANE,
"Witness:                                EVOR CHRISTIANSON,
"Jennie Lance.                                        Arbitrators."

Accompanying such award was a written explanation of the arbitrators, to the effect that, in settling the trouble between *Andrew McCord* and *Peter Flynn*, they found that the Taylor farm was then worth, and would sell for, $3,500 cash; that the stock, with the cash on deposit, would pay all the debts, including the debt on the farm, except $223.49, and as it was fairly understood by them that the design of both parties, as shown by the contract, was that *Flynn* should have two thirds, and McCord one third, of the profits of their investment, therefore they deducted $223.49 from the cash value of the farm, and divided the remainder ($3,276.51) by three, giving to *McCord* $1,092.17; that they considered that *Flynn* sustained a damage by *McCord* leaving him June 19, 1899, as the growing crop at that time of the year needed immediate care, therefore they allowed *Flynn* the improvements which had been placed upon his own farm,— a well, cellar, corncrib, and cow shed; this they decided would make good to *Flynn* all damages he sustained by *McCord's* leaving him; that they could not, under the contract, allow Kate Flynn anything, nor *Peter Flynn*

McCord vs. Flynn.

any clerk hire, as he claimed, for they believed the intention was for both parties to devote their whole time and energy to the paying for the farm; that they had finished their investigation, and made their award, and submitted the whole proceedings to the court, feeling that they had discharged their duty as arbitrators to the best of their ability.   Signed by the arbitrators.

Six days after the making of such award the said arbitrators corrected the same in writing, to the effect that they had on that day discovered an error in the award, caused by an oversight, in which nine head of cattle which belonged to the defendant in 1894 were not counted to his credit; that said nine cattle they valued at $247.50 in the aggregate; and therefore they corrected the award by deducting one third thereof, being $82.50, which left the award, as corrected, $1,009.67.

On June 6, 1900, the court denied the plaintiff's motion to confirm the report and for judgment thereon in his favor, and also denied the defendant's motion to vacate and set aside the award; and thereupon the court further ordered that such award be, and the same was thereby, modified in this: that the sum of $100, being one third of the fees received by *Peter Flynn* as town clerk, credited to the plaintiff as a part of his interest in the earnings of *Peter Flynn*, be deducted from the interest the plaintiff had in the place or the proceeds thereof; that the sum of $131.67, being for one third of the value of Kate Flynn's services, and which sum was credited to the plaintiff as a part of his interest in the earnings of the defendant, *Flynn,* be deducted from the interest the plaintiff had in the place or the proceeds thereof; that the aggregate amount of the two sums, being $231.67, be deducted from the amount awarded to the plaintiff, as corrected, leaving the sum of $778 as the true amount, and that the plaintiff have judgment for that amount; that each party pay his own costs, and that no costs be taxed except those

of the arbitrators, stenographer, and the clerk of the court, which said costs are to be paid by the said parties in equal shares; that the said award be and the same was in all other things confirmed. From the judgment entered upon the award, so corrected and modified, both parties appeal to this court.

For the plaintiff there were briefs by *Palmer & Whitman*, and oral argument by *Platt Whitman*.

*W. E. Howe*, for the defendant.

CASSODAY, C. J.   The defendant contends that his motion to vacate and set aside the award was improperly denied. The principal ground upon which such contention is based is that the plaintiff's claim for the specific performance of the contract for the purchase of the Taylor farm was not within the power of the arbitrators, even though formally submitted to them, and hence that the award thereon is void.   One of the grounds for vacating an award prescribed by statute is "that the arbitrators exceeded their powers." Subd. 4, sec. 3552, Stats. 1898.   The parties were expressly authorized by statute to submit to the arbitrators any controversy existing between them which was or might be the subject of a civil action, except as otherwise provided by statute.   Sec. 3544.   True the statute declares:

"No such submission shall be made respecting the claim of any person to any estate in fee or for life to real estate; but any claim to an interest for a term of years or for one year or less in real estate, and controversies respecting the partition of lands between joint tenants or tenants in common, or concerning the boundaries of lands, or concerning the admeasurement of dower may be so submitted to arbitration."   Sec. 3545.

Under that statute it has been held by this court that arbitrators have no power to determine that a conveyance of land by deed which upon its face conveys an absolute fee shall only have effect as a mortgage. *Russell v. Clark*,

McCord vs. Flynn.

60 Wis. 284. To the same effect, *Lang v. Salliotte,* 79 Mich. 505. There is no question but that the defendant purchased and took a deed in his own name of the Taylor farm. The agreement was that the plaintiff should work for the defendant in cultivating and tilling the land, and finally receive a deed from the defendant for one third of that farm as part compensation for his services. The statutes cited were borrowed from New York, and in that state it has been held that they "forbid the submission of claims to an estate in lands, only where the controversy is as to the legal title, and not where the equitable title only is in dispute." *Olcott v. Wood,* 14 N. Y. 32. This court has held that an award of damages for the overflowage of land had been properly submitted to the arbitrators. *Wood v. Treleven,* 74 Wis. 577, 581. Under the contract in question, the plaintiff never had anything more than an equitable interest in the land. The action was brought for an accounting and to enforce such equitable claim to the land. In the agreement submitting the controversy to the arbitrators, the plaintiff " for the purposes of this arbitration, and finally if judgment be entered upon the award made by such arbitrators," waived " all claim that such contract might give him to the Taylor farm therein mentioned," and agreed " to accept only a money award in his favor for such sum as, under such contract and the testimony given before them, such arbitrators shall determine he should justly receive." We must hold that such submission was not void by reason of the plaintiff's interest in the land.

The contention that the arbitrators had no power to order or determine that the plaintiff should have judgment, for the reason that that question had not been submitted to the arbitrators, is without merit, since such submission not only contained the language just quoted, but the parties therein expressly agreed "that a judgment of the circuit court of Grant county shall be rendered upon the award made pur-

McCord vs. Flynn.

suant to this submission." The legal title to the farm and
the personal property on the farm was in the defendant,
and the submission very properly required the plaintiff " to
accept only a money award in his favor." The judgment is
pursuant to the award, and against the defendant person-
ally. There being no fraud or mistake, the parties are
conclusively presumed to have known the contents of the
agreement for the submission to arbitrators. *Montgomery
v. Am. Cent. Ins. Co.* 108 Wis. 146, 156. In a recent opin-
ion of this court, written by my brother DODGE, it is said,
in effect, that where the arbitrators have exercised, or at-
tempted to exercise, their judgment upon the questions sub-
mitted to them, their award must, in the absence of fraud,
misconduct, or mistake, stand as fixing the rights of the
parties just as fully and finally as if the amounts fixed by
them had originally been agreed upon by the parties and
written into the contract; and that the award is none the
less binding because the arbitrators have erred in judgment
upon any question of fact or law submitted to them for
judgment, such errors being among the contingencies which
parties assume when they select such tribunals. *Consoli-
dated Water Power Co. v. Nash,* 109 Wis. 490, 503, and cases
there cited. When questions of law and fact involved in a
controversy are submitted to arbitrators by the parties, their
award cannot be assailed on the ground of errors honestly
committed by them, whether of law or fact, except in the
cases prescribed by statute. Secs. 3552, 3553, Stats. 1898;
*Fudickar v. Guardian M. L. Ins. Co.* 62 N. Y. 392; *Hoffman
v. De Graaf,* 109 N. Y. 638; *Sweet v. Morrison,* 116 N. Y. 19,
33; *Matter of Wilkins,* 48 App. Div. 433. Thus, it is held
that the award of arbitrators cannot be interfered with for
mere error of judgment as to the law or the facts submitted
to them. *Id.* In other words, so long as arbitrators keep
within their jurisdiction, the court has no general super-
visory power over their awards. *Id.* "Unless restricted by

McCord vs. Flynn.

the submission, arbitrators may disregard strict rules of law and evidence, and decide according to their sense of equity." *Fudickar v. Guardian M. L. Ins. Co., supra.* "The presumption is that arbitrators considered every matter submitted to them, and made their award with respect thereto." *Wood v. Treleven,* 74 Wis. 577. As indicated in the statement, the parties agreed to, and did, "submit their respective claims under said contract" to the arbitrators. That called for a complete accounting between them, and the determination of their respective rights under the contract, except as stipulated in the agreement of submission. We find no ground for disturbing the judgment on the defendant's appeal.

The plaintiff appeals because the court refused to confirm the award as made, but modified the same by deducting from the $1,009.67 award to the plaintiff $131.67, being one third of the value of Kate Flynn's services. She was a sister of the defendant, and lived with him, and constituted a part of his family at the time of the making of the land contract. Under that contract, all proceeds of the two farms "over and above the necessary running expenses, and over and above the maintenance of the" defendant "*and his family*" and the plaintiff, was "to be applied upon and for payment of" the Taylor farm. Since Kate Flynn constituted a part of the defendant's family, and since the respective claims of the parties under that contract were submitted to the arbitrators, it is obvious, under the principles of law stated, that the award of the arbitrators as to that claim was binding upon the parties and was not subject to revision by the court.

But the deduction of one third of the amount which the defendant had received for fees as town clerk, amounting to $100, from the amount so awarded to the plaintiff, stands on a different principle. Such fees were not covered by, nor referred to in, the land contract. The facts in respect to such fees are alleged in the defendant's answer, but were no-

McCord vs. Flynn.

where submitted to the arbitrators. This being so, the court properly modified the award by deducting therefrom the $100 so allowed. The statute expressly authorized the court "to modify or correct such award," since the arbitrators had awarded the same upon a "matter not submitted to them," nor "affecting the merits of the decision upon the matters submitted" to them. Sec. 3553, Stats. 1898; *Doke v. James*, 4 N. Y. 568.

The plaintiff insists that the trial court committed an error in treating the award as embodying the correction made by the arbitrators six days after the date of the original award, whereby there was charged to the plaintiff $82.50, being one third of $247.50, the value of nine head of cattle which the defendant owned in 1894, and which, " by an oversight " on their part, had not been " counted to his credit." It is true, as a general rule, that after arbitrators have made and delivered their award they become *functus officio* and have no power thereafter to rejudge the case and alter the award. *Doke v. James, supra; Flannery v. Sahagian*, 134 N. Y. 85; *Herbst v. Hagenaers*, 137 N. Y. 290. Counsel concede that, if the defendant had moved to modify the award upon the ground that there had been a miscalculation of figures or an evident mistake, the court would have had power to modify the same accordingly. The statute authorized the court " to modify or correct such award . . . . when there is evident miscalculation of figures, or an evident mistake in the description of any person, thing or property referred to in such award." Sec. 3553, Stats. 1898. The motions made by the respective parties gave the court power to correct such miscalculation or mistake in a matter so submitted to the arbitrators, and the order of the court, treating the award as so corrected, must be regarded in part as an order so modifying the award. The correction is dated on the same day the original award was filed. The land contract and the submission to the arbitrators required them to take

into consideration the nine head of cattle owned by the defendant in April, 1894. By a mere oversight, they at first omitted to give credit for the value of such cattle. In making the correction there was no rejudgment nor opening of the case, but merely adding figures which by mistake had been omitted. Under the rulings of this court, the correction of such mistake was permissible. *Ferson v. Drew,* 19 Wis. 225; *Bancroft v. Grover,* 23 Wis. 463

*By the Court.*— The judgment of the circuit court is affirmed, in so far as it is called in question by the defendant's appeal; and upon the plaintiff's appeal the judgment is modified by reducing the amount of the award and increasing the amount of the judgment which the plaintiff is to recover to $909.67, but in all other respects the judgment is affirmed. No costs are allowed in this court on the plaintiff's appeal, except that the defendant must pay the fees of the clerk of this court.