DEHNART, Plaintiff and Respondent, v. WAUKESHA BREWING COMPANY, INC., Defendant and Appellant: INTERNATIONAL UNION UNITED BREWERY, FLOUR, CEREAL, SOFT DRINK & DISTILLERY WORKERS OF AMERICA, A.F.L.-C.I.O., Interpleaded Defendant and Respondent: BREWERY WORKERS LOCAL UNION No. 102 OF INTERNATIONAL UNION UNITED BREWERY, ETC., Additional Interpleaded Defendant and Respondent.

*May 1—June 5, 1962.*

For the appellant there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, attorneys, and *O. S. Hoebreckx* of Milwaukee of counsel, and oral argument by *Mr. Hoebreckx* and *Mr. Richard N. Hunter.*

For the plaintiff-respondent and the interpleaded defendant-respondent there were briefs by *Raskin & Zubrensky,* attorneys, and *Max Raskin* and *Herbert S. Bratt* of counsel, all of Milwaukee, for Dehnart; and by *James C. Paradise* of Cincinnati, Ohio, for the International Union of United Brewery, Flour, Cereal, Soft Drink & Distillery Workers of America, A.F.L.-C.I.O.; and oral argument by *Mr. Max Raskin, Mr. Bratt,* and *Mr. Paradise.*

For the additional interpleaded defendant-respondent there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Martin R. Browning* of counsel, all of Milwaukee, and oral argument by *Mr. Browning.*

DIETERICH, J. The international union and the local union have been duly certified collective-bargaining repre-

sentatives of the plaintiff and the employees of Weber listed in Exhibit A.

The international union and the local union in behalf of Weber employees entered into a contract of employment with Weber on September 2, 1958, retroactive to and effective to May 1, 1958, and terminating on May 1, 1960. The contract contained the following provisions:

Sec. 8, art. II. "All work historically done by employees covered by this agreement shall be the work of employees who are within the coverage of this agreement. The employer shall not transfer, contract, or subcontract any work currently being performed by or recognized as work of employees covered by this agreement."

Sec. 3 (B), art. V. "Other grievances, disputes, or differences relating to the interpretation or application of this agreement shall be taken up in the first instance by the union grievance committee of Local Union No. 102 and the employer's representatives. If a mutually satisfactory adjustment is not arrived at by them within five (5) days, unless extended by mutual agreement, the matter shall be submitted to a board of arbitration upon written request of either party."

Sec. 3 (C), art. V. "The board of arbitration herein referred to shall be chosen and shall operate as follows: Two arbitrators shall be appointed by the union and two by the employer within five days, unless extended by mutual agreement, after the receipt of the request for arbitration. In the event that a majority is unable to agree upon the disposition of the case, a fifth arbitrator, who shall be chairman of the board, shall be designated by the aforesaid four arbitrators. Should the four arbitrators be unable to agree upon the fifth arbitrator within five additional days, unless extended by mutual consent, he shall be designated upon written request of either party, to be determined at time of issue. The board of arbitration as so constituted shall determine the matter at issue by decision in writing signed by at least three of its members, which decision shall be final and binding upon the parties."

On September 17, 1958, Weber received an offer from Fox Head Brewing Company (hereinafter referred to as "Fox Head") for the purchase by Fox Head of the assets of Weber.

Thereafter, on September 26, 1958, Weber posted the following notice:

"To All Weber Waukesha Employees: The directors of Weber Waukesha Brewing Company and Fox Head Brewing Company have agreed to consolidate the operations of the two breweries under a single corporation, the Fox Head Brewing Company. This change was made necessary by the constantly rising costs which could not be passed on to the customer. It is believed by consolidating producing and merchandising activity, costs can be reduced and a competitive position maintained in the industry.

"In time, production operations at Weber will be transferred to Fox Head Brewery, with the result that employment opportunities at Weber will be reduced. Some of the Weber employees will necessarily need to seek employment elsewhere.

"Although it has not been finally determined when this changeover will take place, we thought it only fair to advise you in advance of the effect of this change here at Weber. We regret the loss of employment opportunities at the Weber plant since we have always had pleasant relations with our employees. To those employees affected, we offer our assistance in finding employment elsewhere.

"If you have any questions from time to time, we hope each of you will feel free to inquire at the office.

"Howard C. Hartman
"President."

Weber ceased brewing beer on October 2, 1958, and completed all operations of its brewery on October 31, 1958.

On October 23, 1958, local union filed with Weber a grievance contending that such a transfer of the production operations to Fox Head was in violation of the agreement between the union and Weber and that employees who were laid off as a result thereof must be compensated for any

earnings lost. The testimony reveals that prior to filing of this grievance the union voted against integrating the seniority lists of Weber and Fox Head.

Under date of October 31, 1958, Fox Head by letter notified the local union that Weber was going out of the beer business and that it did not consider the international union and the local union grievance, which was submitted as of October 23, 1958, as an arbitrable issue but that in order to comply with the technical provisions of the contract that they would designate and did designate arbitrators as named by Weber under the provisions of sec. 3 (C), art. V of the contract.

It was subsequently agreed between the international union, local union, Fox Head, and Weber that the American Arbitration Association appoint an arbitrator pursuant to the provisions of sec. 3, art. V of the labor contract. In accordance with the agreement the American Arbitration Association appointed John F. Sembower, arbitrator.

Pending the arbitration, the local union proposed amendments to the union agreement which provided that any additional help at Fox Head would be hired in accordance with Weber's seniority lists, that Weber truckers would be given special seniority by Fox Head to deliver Weber beer, and that Weber employees hired by Fox Head would be credited with past Weber services at Fox Head for purposes of vacation and pensions. Further, if the arbitration should be decided in favor of Weber, these amendments to the agreement would remain a part of the contract for the balance of its term but if the arbitration resulted in sustaining the grievance, such amendments would be of no effect as of the date of the arbitration award. These proposals were accepted and complied with by Weber and Fox Head.

The arbitrator decided that the grievance was arbitrable and that the grievance was sustained and that the Weber employees who were laid off should be compensated for any

earnings lost from the time of layoff to the termination date of the labor contract (May 1, 1960) exclusive of any earnings they may have received from employment at Fox Head.

The local union held a meeting on June 9, 1959. The minutes in evidence disclose that the members in attendance at the meeting voted not to accept the arbitrator's award. However, the testimony of Mr. Francis Duchaney, an employee of Fox Head and president of the local union, is that the membership of the union was composed of Weber and Fox Head employees. That at the June 9, 1959, meeting there were 45 Fox Head employees present, 11 Weber employees, and three others, and that the Weber employees voted as a block against the motion to reject the award and most of the Fox Head employees voted in favor of rejecting the award.

On June 12, 1959, Mr. Hartman, president of Fox Head, who was also president of Weber, acknowledged the notification of the local union's action and stated he would proceed as if the award had never been made.

The first contention advanced by Weber on this appeal is that the arbitrator exceeded his powers in taking jurisdiction to determine the merits of the dispute. Weber maintains that the transaction between it and Fox Head was not subject to arbitration under the labor agreement; that a decision favorable to arbitrability is subject to appeal to the courts.

Weber's position with regard to the arbitrator's jurisdiction to decide the dispute is untenable. Weber is bound by its contract with the local union and the international union. Under the terms of that contract any grievance involving interpretation of labor contract was subject to arbitration. Arbitration of the grievance was enforced by sec. 3 (D), art. V,[1] which states that any party not submitting

---

[1] "(D) There shall be no strike or lockout while arbitration is pending; provided, however, that in the event that one party should

to arbitration should automatically lose its case. The language of sec. 8, art. II, to wit, "the employer shall not *transfer* . . . any work*," was for the interpretation of the arbitrator. "Transfer" is a broad word and the meaning given it by the arbitrator was the interpretation bargained for by the parties.

The arbitrator held that a sale, merger, or any other transaction involving a work transfer from the Weber Brewery was in violation of the contract. While this court may disagree with the interpretation of the contract reached by the arbitrator, we will not substitute our judgment for that of the arbitrator. The parties contracted for the arbitrator's settlement of the grievance and that is what they received.

In *United Steelworkers of America v. American Mfg. Co.* (1960), 363 U. S. 564, 567, 80 Sup. Ct. 1343, 1346, 4 L. Ed. (2d) 1403, it is stated:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for."

In *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U. S. 574, 581, 80 Sup. Ct. 1347, 1352, 4 L. Ed. (2d) 1409, the court held:

fail or refuse to appoint arbitrators or should take any action to prevent arbitration, or should fail or refuse to comply with a decision of the board of arbitration within three days after its receipt, the party in default shall automatically lose its case, and in addition to whatever other remedies may be available to the party not in default, the first clause of this paragraph shall not be binding upon such party."

". . . the grievance machinery under a collective-bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement."

See also Updegraff, Arbitration of Labor Disputes (2d ed.), p. 30, sec. 4.

Weber further contends that the action of the local union in rejecting the arbitrator's award of June 9, 1959, is binding upon Dehnart and his fellow Weber employees.

The Weber employees through their bargaining agent, the local union, bound themselves to the labor contract which is the subject of this dispute. Their rights with respect to their grievance were determined by the arbitrator within the four corners of the contract. The grievance procedure called for by their labor agreement with Weber required arbitration if the grievance was not settled by the parties.

Pending arbitration, the local union, as the Weber employees' agent, had authority to make an interim agreement with Weber. The interim agreement of November 2, 1958, specifically provided:

"If the arbitration results in sustaining the grievance, said amendments shall be of no effect as of the date of said arbitration award."

The rights of the Weber employees became vested under the terms of the contract at the time the award was made and could not be bargained away by their agent, local union, without the express consent of the Weber employees. *Clark v. Hein-Werner Corp.* (1959), 8 Wis. (2d) 264, 277a, 99 N. W. (2d) 132, 100 N. W. (2d) 317.

Weber also asserts that Dehnart and his fellow Weber employees are estopped from making any claim under the award as they have accepted benefits under the interim agreement. This agreement merely covered that period of time from November 2d until the arbitration award was made. Therefore, they are entitled to the benefits they received under the interim agreement up to and until the award was made May 28, 1959. However, any benefits received by Weber employees after that time are subject to setoff when the final determination of the award is made, pursuant to sec. 269.56 (8), Stats.[2]

Estoppel will not lie as a matter of public policy where Weber and the local union refused the arbitration award and continued the interim agreement without the consent of the Weber employees. The fact that the Weber employees worked and continued to receive the benefits under the terms of the interim agreement was not the result of their own doing and the continuing of such work and the receiving of such benefits did not constitute bad faith.

*By the Court.*—Judgment affirmed, with instructions for further proceedings in conformity with sec. 269.56 (8), Stats.

[2] "(8) *Supplemental relief.* Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."