WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Petitioner-Appellant, v. TEAMSTERS LOCAL NO. 563, Intervenor-Appellant: CITY OF NEENAH, Respondent.†

*No. 75–43. Argued November 29, 1976.—*
*Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 696.)

† Motion for rehearing denied, without costs, on April 25, 1977.

For Wisconsin Employment Relations Commission the cause was argued by *Charles D. Hoornstra*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For Teamsters Local No. 563 there was a brief by *David Loeffler* and *Goldberg, Previant & Uelmen, S. C.* and oral argument by *Mr. Loeffler*, all of Milwaukee.

For the respondent there was a brief and oral argument by *Daniel P. Murphy*, city attorney of Neenah.

*On motion for rehearing:*

For Wisconsin Employment Relations Commission a brief in support of motion for rehearing was filed by *Bronson C. La Follette*, attorney general, *Gordon Samuelsen* and *David C. Rice*, assistant attorneys general.

For Teamsters Local No. 563 there was a brief in support of appellant's motion for rehearing filed by *John S. Williamson, Jr.*, and *Goldberg, Previant & Uelmen, S.C.* of Milwaukee.

For the respondent there was a brief in opposition to motion for rehearing filed by *Daniel P. Murphy*, city attorney of Neenah.

A brief amici curiae in support of motion for rehearing was filed by *Richard V. Graylow* and *Lawton & Cates* of Madison, for Wisconsin Council of County and Municipal Employees, Milwaukee Council District 48, Wisconsin Education Association Council, Wisconsin Professional Police Association and the Professional Firefighters of Wisconsin.

BEILFUSS, C. J.   The basic issue raised by both appellants, the WERC and the Teamsters Local, is whether the arbitrator had the power to determine that the dis-

charge of the employee by the city was not for just cause in spite of a city ordinance that required all employees be residents of the city.

A second issue, raised only by the WERC, is whether the circuit court had jurisdiction to review the WERC order.

Robert Robbins was hired by the City of Neenah on April 15, 1967, as an employee in the city's street and sanitation department. On November 2, 1966, prior to the time Robbins was hired, the city enacted an ordinance which required all employees to live within the city. Robbins was a resident of Neenah when he was hired.

The pertinent part of the residency ordinance is as follows:

"(12) RESIDENCE OF EMPLOYEES. As a resident of Neenah will normally have more interest in his job and City than will a non-resident, it is expected that all employees of the City of Neenah live in the City. Any exceptions to the following controls require the authorization of the Finance Committee. The following controls shall be practiced:

"(a) The City Clerk-Comptroller shall be kept informed of the address of all City employees. Changes in address should be reported promptly.

"(b) Employees living outside of the City of Neenah at the time of hire who do not reside in the City limits one year from their date of hire shall be removed from the payroll.

"(c) Employees moving out of the City limits shall be removed from the payroll."

Robbins became a member of Teamsters Local No. 563. It was the bargaining agent for many of the city employees, including Robbins. The city and the union (Teamsters Local No. 563) entered into a collective bargaining agreement effective for the period of January 1, 1969 through December 31, 1970. The city council approved this collective bargaining agreement by resolution.

No specific reference was made to the residency ordi-

nance nor was there any reference to employee residence in the collective bargaining agreement. The agreement did, however, contain the following general provisions as to discharge and arbitration.

*"ARTICLE 11—DISCHARGE OR SUSPENSION*
"The Employer shall not discharge or suspend any employee without just cause. . . ."

*"ARTICLE 15—ARBITRATION*
*"Section A.*
"Any grievance relative to the interpretation or application of this Agreement, which cannot be adjusted by conciliation between the parties, may be referred by either party hereto, within five (5) days to the Wisconsin Employment Relations Commission for the appointment of an arbitrator from its staff.
*"Section B.*
"The arbitrator shall, in so far as possible, within five (5) days of his appointment conduct hearings and receive testimony relating to the grievance and shall submit his findings and decisions. The decision of the arbitrator shall be final and binding on both parties to this Agreement.
"  . . .
*"Section D.*
"It is understood that the arbitrator shall not have the authority to change, alter or modify any of the terms or provisions of this Agreement."

In September, 1970, Robbins moved to the neighboring City of Menasha to a home owned by his family. On October 27, 1970, Neenah's Director of Administration notified Robbins, in writing, he was violating the city ordinance by maintaining his residence outside the City of Neenah. Robbins was further informed that if he wanted to remain on the city payroll he would have to re-establish his residence in Neenah by December 31, 1970. On December 23d, both Robbins and the union were notified in writing that Robbins would be discharged December 31st. He did not move back to Neenah and his employment was terminated as of December 31, 1970. The city does not contend that Robbins was not a good

employee in all other respects. The sole reason for his discharge was because he was not a resident of the city.

Subsequent to the discharge of Robbins the union requested WERC to arbitrate the issue of whether Robbins was discharged for just cause. The city concurred in this request. A hearing was held in February, 1971. The arbitrator, John T. Coughlin, made an award on December 9, 1971. The award ordered Robbins reinstated and held that the city violated Robbins' right to procedural due process. The city did not reinstate Robbins. The union then filed a complaint with the WERC alleging the city committed a prohibited practice within the meaning of sec. 111.70, Stats. A hearing examiner was appointed —a hearing was held in March, 1972, and the examiner held that the arbitrator had exceeded his powers. The union petitioned the WERC for review of the hearing examiner's decision. On October 13, 1972, the WERC held that the arbitrator's award was not a final and binding award with respect to whether the discharge was for just cause. The arbitration proceeding was remanded to Arbitrator Coughlin for further hearing and a definite award. Further hearing was waived by the parties. Coughlin entered his second award on January 18, 1973. He held that because the ordinance in question was not contained in the contract, it was a work rule which was not reasonably related to the job performed. Therefore, the discharge was not for just cause. The arbitrator ordered the city to offer Robbins reinstatement, and to pay him an amount of money equal to that which he would have earned less any amount he earned while discharged that he otherwise would not have earned.

Again the city ignored the order and the union filed an amended complaint charging the city's conduct was prohibited practice. The WERC held the city was committing a prohibited practice by refusing to accept the arbitration award. On October 25, 1973, the WERC ordered the city to comply with the award. The city

ignored this order and the WERC commenced this action seeking enforcement of its order. The union intervened.

The circuit court ruled that it had jurisdiction, under sec. 111.07, Stats., to review the WERC's order and that the just cause for discharge provision of the agreement did not confer authority upon the arbitrator to rule on the reasonable application of discharge under the pre-existing residency ordinance. Based on this holding, on February 10, 1975 the court set aside the arbitration award and dismissed the complaint of the union. Both the WERC and the union appealed this judgment.

■

The WERC contends that the circuit court did not have jurisdiction to review the arbitration award. It argues that ch. 227, Stats., Administrative Procedure and Review, provides the only method for review of administrative decisions and that sec. 111.07 (7) merely sets the standards for review under a ch. 227 proceeding. It is our opinion this argument must be rejected. The language of sec. 111.07 (7) [1] is clear and unambiguous. It

---

[1] "111.07 *Prevention of unfair labor practices.* . . . (7) If any person fails or neglects to obey an order of the commission while the same is in effect the commission may petition the circuit court of the county wherein such person resides or usually transacts business for the enforcement of such order and for appropriate temporary relief or restraining order, and shall certify and file in the court its record in the proceedings, including all documents and papers on file in the matter, the pleadings and testimony upon which such order was entered, and the findings and order of the commission. Upon such filing the commission shall cause notice thereof to be served upon such person by mailing a copy to his last known post-office address, and thereupon the court shall have jurisdiction of the proceedings and of the question determined therein. Said action may thereupon be brought on for hearing before said court upon such record by the commission serving 10 days' written notice upon the respondent; subject, however, to provisions of law for a change of the place of trial or the calling in of another judge. Upon such hearing the court may confirm, modify, or set aside the order of the commission and enter an appropriate decree.

provides that if a person fails or neglects to obey an order of the commission, the commission may petition the circuit court for enforcement of the order. A hearing is then to be held. "Upon such hearing the court may confirm, modify, or set aside the order of the commission and enter an appropriate decree." When the WERC petitioned for enforcement of its order under sec. 111.07 (7), the court had the power to review the decision and "confirm, modify, or set aside the order." Sec. 111.-07(8)[2] supports the position that sec. 111.07(7) gives the circuit court the power to review the commission's order. Sec. 111.07(8) states, "[t]he order of the commission shall also be subject to review in the manner provided in ch. 227. . . ." This sentence means that in addition to the review provided in sec. 111.07(7), a review under ch. 227 procedures is available; it is not exclusive as the WERC brief contends.

In *Wisconsin Employment Relations Board v. Allis-Chalmers Workers Union,* 252 Wis. 436, 31 N.W.2d 772, 32 N.W.2d 190 (1948), the employment relations board petitioned the circuit court for enforcement of its order, and the court dismissed the order as being moot. On appeal this court held that the dismissal was improper because the question was not moot. The implication of this holding was that under sec. 111.07(7), Stats., it is proper for a circuit court to set aside an order of the WERC. This court did not reverse because the circuit court had exceeded its powers in setting aside the order, but because it had otherwise erred in setting the order

No objection that has not been urged before the commission shall be considered by the court unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of fact made by the commission, if supported by credible and competent evidence in the record, shall be conclusive. . . ."

[2] "(8) The order of the commission shall also be subject to review in the manner provided in ch. 227, except that the place of review shall be the circuit court of the county in which the appellant or any party resides or transacts business."

aside. On remand, under sec. 111.07(7), the trial court had the duty to determine upon the record made before the board whether the order "should be confirmed, modified, or set aside."

In *State v. Lamping,* 36 Wis.2d 328, 339–40, 153 N.W. 2d 23, 29–30 (1967), this court traced the history of ch. 227 as it related to sec. 111.07(7), Stats., and noted that although this section provided an exception to the uniformity of judicial review of administrative actions, it was a permissible exception intended by the legislature. "Sec. 111.07(7), Stats., provides not only for the enforcement of an order but for the judicial review of an order."

While sec. 111.07, Stats., confers upon the court the power to modify or set aside orders of the WERC, a necessary question remains: What is the appropriate standard of review a court shall use in determining whether to modify or set aside a WERC order. The standard of review should be dependent on the nature of the WERC's order. In this case the WERC's order enforced an arbitrator's award. The WERC does not have the power to review arbitration awards. Sec. 298.-01 provides for court review of arbitration awards.[3] The city did not seek such review. However, the WERC does have the statutory authority to enforce the terms of a labor arbitration award where one party to an agreement to arbitrate has refused to abide by an award. Secs. 111.70(4)(a) and 111.07(4). The standards for court review are set out in sec. 298.10(1).[4] WERC de-

[3] Sec. 298.09, Stats., provides in part that "the provisions of this chapter shall not apply to contracts between employers and employes, or between employers and associations of employes, except as provided in section 111.10 of the Statutes." However, sec. 111.10 provides for the appointment of arbitrators in labor disputes by the WERC and states that "[p]roceedings in any such arbitration shall be as provided in Chapter 298."

[4] "298.10 *Vacation of award, rehearing by arbitrators.* (1) In either of the following cases the court in and for the county

termined that the arbitrator had not violated any of those standards. In reviewing the WERC's order, the circuit court was, in essence, reviewing the award of an arbitrator and must follow the statutory standards for court review of arbitration awards. If the standards of secs. 298.10 and 298.11[5] were not violated by the arbitrator's award, the circuit court should not have set it aside. In *Dehnart v. Waukesha Brewing Co.*, 17 Wis. 2d 44, 51, 115 N.W.2d 490, 493 (1962), is the following statement:

"While this court may disagree with the interpretation of the contract reached by the arbitrator, we will not substitute our judgment for that of the arbitrator. The parties contracted for the arbitrator's settlement of the grievance and that is what they received."

wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means;

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[5] "298.11 *Modification of award.* (1) In either of the following cases the court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration:

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

"(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"(2) The order must modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

The "hands off" attitude of this court toward arbitrators' decisions is consistent with that of other courts.[6]

The trial court concluded the arbitrator exceeded his powers in determining the discharge of Robbins was not for just cause. Under the standards of sec. 298.10, Stats., this is an appropriate reason for setting aside an arbitrator's award. The issue for this court is whether the trial court was correct in determining that the arbitrator exceeded his authority. An arbitrator obtains his authority from the contract of the parties.[7] The contract in this case provided that "[a]ny grievance relative to the interpretation or application" of the contract was arbitrable. It also provided that "[t]he decision of the arbitrator shall be final and binding. . . ." and "the arbitrator shall not have the authority to change, alter or modify any of the terms or provisions of this Agreement."

At the time the parties adopted the agreement the residency ordinance was in existence. The agreement provided that the employer would not discharge an employee without just cause. There was no indication in the agreement as to how the just cause provision would relate to the preexisting ordinance.[8] The circuit court reasoned that because there was nothing in the agree-

---

[6] See *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567 (1960); *Northwest Airlines, Inc. v. Air Line Pilots Ass'n,* 530 F.2d 1048, 1050 (D.C. Cir. 1976), *cert. denied,* 426 U.S. 942 (1976); *United Steelworkers v. Amax Aluminum Mill Products, Inc.,* 451 F.2d 740, 742–43 (9th Cir. 1971); *Note,* "Judicial Review of Labor Arbitration Awards After the Trilogy," 53 Cornell L. Rev. 136 (1968).

[7] Moberly and Mulcahy, *Public Employment Labor Relations,* p. 64 (1974).

[8] This is not an unusual problem. "Often, state collective bargaining enabling acts give no indication of the relationship the legislature desired to establish between contractual terms and statutes covering similar issues." *Note,* "Public Sector Grievance Procedures, Due Process, and the Duty of Fair Representation," 89 Harv. L. Rev. 752, 753 (1976).

ment indicating that the city agreed to arbitrate discharges based on the ordinance, and because every contract is considered made with reference to existing law, discharges under the ordinance were distinct and independent from the "just cause" section of the contract. The court held the arbitrator exceeded his authority under the contract in arbitrating the just cause of the discharge in view of the residency ordinance violation.

In *Board of Education v. WERC*, 52 Wis.2d 625, 191 N.W.2d 242 (1971), it was held that a provision of a labor contract which provided for the release of teachers from in-service days to attend, with pay, a state teachers' convention of the majority union and which denied compensation to teachers attending a minority union convention was a prohibited discriminatory practice. Both parties to the contract were guilty of discrimination because both had agreed to the provision. The court noted that a labor contract term that violates public policy or a statute is void as a matter of law. *Id.* at 635, 191 N.W.2d at 247.

The city and the union could not have included a provision in the contract stating that the ordinance did not apply to union members. Such a term would have been void because it provided for violation of the ordinance and perhaps constitutional equal protection. A labor contract term whereby parties agree to violate a law is void. *Board of Education v. WERC, supra* at 634–35, 191 N.W.2d at 247.[9] Just as a contractual provision to di-

---

[9] *Accord, International Brotherhood of Tmstrs. v. City of Minneapolis* (Minn), 225 N.W.2d 254, 259 (1975). (Provision of a contract entered into pursuant to Public Employment Labor Relations Act, which of itself or in its implementation violates or is in conflict with the public employers' home rule charter, is void and of no effect.) *But see, Alexander v. Gardner-Denver Company*, 415 U.S. 36, 56–57 (1974), where a collective bargaining agreement conflicts with a statute the arbitrator must follow the agreement. However, the duty of the arbitrator does not preclude a court review of the legality of the contract.

rectly violate the law is void, a contractual provision conferring upon a third party the power to interpret the contract in such a manner that a violation will occur is also void. In arbitrating whether the discharge pursuant to the ordinance was for just cause, the parties used a contractual provision as a means for violating the law. What they cannot do directly they have attempted to do indirectly. Because a contract provision that violates the law is void, the question of whether a discharge pursuant to the ordinance is for just cause is not arbitrable. An arbitrator obtains his authority from the contract and a contract term may neither violate the law nor confer authority upon a third party to interpret the contract in a manner which violates the law.[10] Therefore the arbitrator exceeded his authority under the contract in arbitrating whether the discharge was for just cause.[11]

The union argues that the residency ordinance must be accommodated with the "legislative enactment" adopting the contract between the union and the city. However, the residency requirement was part of an ordinance, whereas the adoption of the contract was by motion— "A resolution ordinarily denotes something less solemn or formal than, or not rising to the dignity of, an ordinance." 5 McQuillin, *The Law of Municipal Corporations*, (3d ed. 1969), p. 42, sec. 15.02. Therefore there was no need to accommodate the ordinance and the resolution. The resolution did not rise to the dignity of a repeal or amendment of the ordinance.

[10] *See Central School District v. Teachers Assn.*, 74 L.R.R.M. 2221, 2222 (N.Y. Supreme Ct. (1970)).

[11] While neither the union nor the WERC challenges the constitutionality of the residence ordinance, in a recent Per Curiam opinion, *McCarthy v. Philadelphia Civil Service Comm.*, 424 U.S. 645, 646–47 (1976), the court stated that "appellant claims a constitutional right to be employed by the city. . . *while* he is living elsewhere. There is no support in our cases for such a claim." The court noted that in the cases where a constitutional right to interstate travel was recognized there was no challenge to the validity of a condition placed upon municipal employment that a person be a resident at the time of his application.

Reference is made to sec. 111.93 (3), Stats.,[12] as an analogy. The section provides that if a labor agreement exists between the state and a union the provisions of the labor agreement shall supersede civil service provisions and other applicable statutes. If such a statute did apply in this case the discharge because of residency would be arbitrable. The statute does not apply for two reasons: It affects only state employees, not municipal employees, and it was enacted after this dispute arose.

We conclude the arbitrator exceeded his authority when he considered the residency ordinance and concluded it was a mere "work rule" subject to the just cause provision of the labor agreement.

*By the Court.*—Judgment affirmed.

ABRAHAMSON, J. *(dissenting).* The majority concludes that the arbitrator exceeded his powers when he determined that the discharge of Robbins was not for just cause. I respectfully dissent. I believe that the arbitrator acted pursuant to the authority granted him by the collective bargaining agreement and that the majority is improperly substituting its judgment on the merits of the matter for that of the arbitrator.[1]

---

[12] "111.93 *Effect of labor organization: status of existing benefits and rights.* . . . (3) If a labor agreement exists between the state and a union representing a certified or recognized bargaining unit, the provisions of such agreement shall supersede such provisions of civil service and other applicable statutes related to wages, hours and conditions of employment whether or not the matters contained in such statutes are set forth in such labor agreement."

[1] The record is unclear, but if both parties voluntarily submitted the dismissal grievance to arbitration and no objection was made to the arbitrator that he had no jurisdiction, participation in an arbitration hearing on the merits of a dispute results in waiver of the right to raise the issue of arbitrability after the arbitrator has made his decision. *Manitowoc v. Manitowoc Police Dept.,* 70 Wis.2d 1006, 1020–1021, 236 N.W.2d 231 (1975); *In re Lower Baraboo River Drainage District v. Schirmer,* 199 Wis. 230, 225 N.W. 331 (1929); Annot. *Participation in Arbitra-*

The collective bargaining agreement was entered into pursuant to the Municipal Employment Relations Act, secs. 111.70–111.77, Stats. Sec. 111.70(1)(d), Stats., defines collective bargaining to include reaching a written agreement relating to "wages, hours and conditions of employment." This court has held that a dismissal falls within the embrace of the statutory phrase "wages, hours and conditions of employment." *Richards v. Board of Education*, 58 Wis.2d 444, 460b, 206 N.W.2d 597 (1973).[2] Thus the city had the power to negotiate a collective bargaining agreement, including binding arbitration, on the issue of dismissals.

There is a strong legislative policy in Wisconsin favoring arbitration in the municipal collective bargaining context as a means of settling disputes and preventing individual problems from growing into major labor disputes. Secs. 111.70(3)(a)5,[3] 111.70(6),[4] Stats.; *Local*

---

*tion Proceedings as Waiver of Objections to Arbitrability*, 33 ALR3d 1242 (1970).

[2] "[T]his court has no difficulty in concluding that a grievance procedure established by a collective bargaining agreement, and relating to dismissals falls within the embrace of 'wages, hours and conditions of employment,' and that the conditions of such an agreement are binding on the parties." *Richards v. Board of Education*, 58 Wis.2d 444, 460b, 206 N.W.2d 597 (1973).

[3] Under sec. 111.70(3)(a)5, Stats., it is declared a prohibited practice to "violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employes, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such award as final and binding upon them."

[4] "DECLARATION OF POLICY. The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employes so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. If such procedures fail, the parties should have available to them

*1226 v. Rhinelander,* 35 Wis.2d 209, 216, 151 N.W.2d 30 (1967) ; *Teamsters Union Local 695 v. Waukesha County,* 57 Wis.2d 62, 69, 203 N.W.2d 707 (1973). The similar federal policy favoring arbitration of disputes arising under collective bargaining was enunciated by the United States Supreme Court in the Steelworkers' Trilogy. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed.2d 1409 (1960) ; *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed.2d 1424 (1960) ; *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed.2d 1403 (1960). Our court has looked to the federal law of labor regulations as a useful guide to giving meaning to ch. 111.70, Stats. *WERC v. City of Evansville,* 69 Wis.2d 140, 151–154, 156, 159–161, 164, 165, 230 N.W.2d 688 (1975) ; *Joint School District No. 8 v. WERB,* 37 Wis.2d 483, 490, 491, 155 N.W.2d 78 (1967).

In *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 567–568, 80 S. Ct. 1343, 4 L. Ed.2d 1403 (1960), the Court said that while the question whether a dispute is arbitrable is for a court, the judicial inquiry "is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is then confined to ascertaining whether the party seeking arbitration is making a *claim which on its face* is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. . . . The courts, therefore, have no business weighing the merits of the grievance . . . ." (Emphasis supplied.)

The arbitrator obtains his authority from the collective bargaining agreement. The contract in this case provided that "[a]ny grievance relative to the interpretation or application" of the contract was arbitrable. It

a fair, speedy, effective and, above all, peaceful procedure for settlement as provided in this subchapter." Sec. 111.70 (6), Stats.

also provided that "[t]he decision of the arbitrator shall be final and binding. . . ." The contract further has an arbitration provision in the discharge section (*see* note 7 of this opinion). Robbins' grievance raised a question of interpretation or application of the collective bargaining agreement because it related to whether his discharge was for just cause. Whether an ordinance violation is just cause goes to the interpretation of just cause. This court has held that a dismissal grievance is a question relating to the interpretation and application of the collective bargaining agreement. *Local 1226 v. Rhinelander*, 35 Wis.2d 209, 219, 151 N.W.2d 30 (1967).

I would hold that the dismissal grievance was subject to arbitration under the contract and that the arbitrator had subject matter jurisdiction over this dispute. He therefore did not "exceed his powers" within the statutes controlling judicial review of arbitration decisions. Sec. 298.10, Stats. Once we eliminate that ground for review, there is no other ground for review available in this case under sec. 298.10, Stats. Sec. 298.10 restricts review largely to attacks on the integrity of the arbitrator and the evidentiary basis for his decision. Even if we assume that the majority opinion is correct in its interpretation of the contract and ordinance and that the arbitrator erred in this respect, this is a case in which the arbitrator's determination would be unchallengeable. On numerous occasions our court and other courts have held that the decision of an arbitrator cannot be interfered with for mere errors of judgment as to law or fact.[5]

---

[5] *See, e.g., Scherrer Construction Co. v. Burlington Mem. Hospital*, 64 Wis.2d 720, 726–729, 221 N.W.2d 855 (1974); *Dehnart v. Waukesha Brewing Co.*, 17 Wis.2d 44, 51, 115 N.W.2d 490 (1962) ("While this court may disagree with the interpretation of the contract reached by the arbitrator, we will not substitute our judgment for that of the arbitrator. The parties contracted for the arbitrator's settlement of the grievance and that is what they received."); *Putterman v. Schmidt*, 209 Wis. 442, 451, 245 N.W. 78 (1932) ("Mistakes of judgment, mistakes

However, courts will overturn an arbitrator's award if there is a perverse misconstruction, or if there is positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy. *Scherrer Construction Co. v. Burlington Mem. Hospital,* 64 Wis.2d 720, 729, 211 N.W.2d 855 (1974).[6] I find none of these grounds here. Indeed a good argument is made that the causes of discharge listed in the city ordinance were intended to be subject to the "just cause" and arbitration provisions of the collective bargaining agreement. Discharges under the ordinance are not distinct and independent from the just cause section of the agreement as the majority contends. The general rule in interpreting collective bargaining agreements is that items not spe-

of either fact or law, are not ground for review of or setting aside an award."); *Standard Construction Co. v. Hoeschler,* 245 Wis. 316, 320–321, 14 N.W.2d 12 (1944) (" '[A] submission to arbitration . . . confers . . . jurisdiction to decide erroneously, if honestly, and to bind the parties to such determination by force of their agreement to be so bound.' " quoting *Travelers Ins. Co. v. Pierce Engine Co.,* 141 Wis. 103, 108, 123 N.W. 643); *Reith v. Wynhoff,* 28 Wis.2d 336, 343, 137 N.W.2d 33 (1965) ("It was an ancient rule at common law that mere errors of judgment were not enough to upset an award whether upon questions of fact or of law if within the submission."); *Decker v. Ladish-Stoppenback Co.,* 203 Wis. 285, 291–292, 234 N.W. 355 (1931); *Donaldson v. Buhlman,* 134 Wis. 117, 119, 113 N.W. 638, 114 N.W. 431 (1908); *McCord v. Flynn,* 111 Wis. 78, 88, 86 N.W. 668 (1901). *See also Mogge v. District 8, I.A.M.,* 454 F.2d 510, 513 (7th Cir. 1971); *Papenfuss v. Abe W. Mathews Engineering Co.,* 397 F. Supp. 165, 166 (W.D. Wis. 1975); *Associated Teachers of Huntington, Inc. v. Board of Educ.,* 351 N.Y.S.2d 670, 306 N.E.2d 791 (1973); Elkouri & Elkouri, *How Arbitration Works,* p. 322, n. 7 (3d ed. 1973).

[6] *See Associated Teachers of Huntington v. Board of Educ.,* 351 N.Y.S.2d 670, 306 N.E.2d 791 (1973); *Garrity v. Lyle Stuart, Inc.,* 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976); Note, *Judicial Review of Arbitration: The Role of Public Policy,* 58 Nw. U.L. Rev. 545 (1964).

cifically excluded from arbitration in the agreement are deemed included. The United States Supreme Court has said that "[a]part from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed.2d 1409 (1960). Note that article 11 of the agreement refers to discharge for dishonesty and drunkenness and excepts these causes of discharge from the warning notice required under the collective bargaining agreement.[7] Yet intoxication on the job, drinking intoxicating

[7] Article 11 of the Collective Bargaining Agreement provides as follows:

"ARTICLE 11—DISCHARGE OR SUSPENSION

"The Employer shall not discharge or suspend any employee without just cause and shall give at least one warning notice of the complaint against such employee to the employee in writing and a copy of same to the Union except that no warning notice need be given to an employee before his discharge if the cause of such discharge is dishonesty, drunkenness or drinking while on duty, recklessness, endangering others while on duty, or the carrying of unauthorized passengers in city-owned vehicles while on duty. The warning notice as herein provided shall not remain in effect for more than one-hundred and eighty (180) days from date of issuance.

"Discharge or suspension of an employee must be by proper written notice, registered mail, return receipt, sent to the last known address of the employee with a copy to the Union. Any employee may request an investigation as to his discharge. Should such investigation prove that an injustice has been done, the employee shall be reinstated and compensated at his usual rate of pay while he has been out of work.

"Appeal from discharge must be taken within five (5) days by written notice to the Superintendent of the Department and a meeting held between the Employer and the Union within fifteen (15) days after the appeal is filed. A decision must be reached within five (5) days from the date of this meeting.

"The employee may be reinstated under other conditions agreed upon by the Employer and the Union or pursuant to the terms

beverages while on the job, and stealing are grounds for discharge in sec. 2.05(7)(b) of the ordinances—which also lists moving out of the city as a ground for discharge.[8] Also, note that sec. 2.05(12) of the ordinances relating to discharging employees moving out of the city is not a mandatory, automatic provision; an element of discretion is built in. The Finance Committee is authorized to make exceptions.[9] Here the arbitrator said non-

---

of an arbitration award. Failure to agree shall be cause for the matter to be submitted to arbitration as provided in Article 15 of this Agreement."

[8] The city ordinance provides as follows:

"2.05(7)(b) *Discharges.* An employee shall be subject to immediate discharge from employment with the City if he:

"1. Becomes intoxicated on the job, or comes to the job intoxicated.

"2. Drinks intoxicating beverages or frequents taverns while on the job.

"3. Refuses to obey any reasonable order of his supervisor.

"4. Is the aggressor in a fight wherever blows are attempted.

"5. Is caught stealing.

"6. Is arbitrarily and without cause, rude, insolent or profane in dealing with the public.

"7. After warning for previous offenses, is careless and damages property.

"8. Moves outside the City."

[9] The city ordinance provides as follows:

"2.05(12) RESIDENCE OF EMPLOYEES. As a resident of Neenah will normally have more interest in his job and City than will a non-resident, it is expected that all employees of the City of Neenah live in the City. Any exceptions to the following controls require the authorization of the Finance Committee. The following controls shall be practiced:

"(a) The City Clerk-Comptroller shall be kept informed of the address of all City employees. Changes in address should be reported promptly.

"(b) Employees living outside of the City of Neenah at the time of hire who do not reside in the City limits one year from their date of hire shall be removed from the payroll.

"(c) Employees moving out of the City limits shall be removed from the payroll."

residency would be "just cause" if the non-residency had a reasonable relation to the job performance. The relationship of the collective bargaining agreement and the prior ordinances is not a clear-cut issue. Both the ordinances and the agreement were adopted by the city council pursuant to authorization of state statute. One could find that a later, more specific council pronouncement supersedes a prior general rule. One could interpret both the ordinances and agreement to give meaning to both.

For these reasons, I would reverse the trial court's judgment.