IN RE ARBITRATION: SCHERRER CONSTRUCTION COMPANY, Respondent, v. BURLINGTON MEMORIAL HOSPITAL, Appellant.

*No. 271. Argued September 9, 1974.—Decided October 1, 1974.*
(Also reported in 221 N. W. 2d 855.)

724

For the appellant there was a brief by *Donald A. Butchart* and *Benson, Butchart & Haley,* all of Racine, and oral argument by *Donald A. Butchart.*

For the respondent there was a brief by *Stroud, Stroud, Willink, Thompson & Howard* and *C. Vernon Howard,* all of Madison, and oral argument by *C. Vernon Howard.*

WILKIE, C. J.   Three issues are raised on this appeal:

1.  What is the scope of judicial review of arbitration awards?

2.  Did the arbitrators exceed their powers in making the award?

3.  Is the award mutual, final and definite?

1.  *Scope of review.*

The grounds upon which an arbitration award may be vacated are specified in sec. 298.10, Stats.[3]  The main thrust of the hospital's argument is that the arbitrators "exceeded their powers" (sec. 298.10 (1) (d)) by miscon-

---

[3] Sec. 298.10, Stats., provides: "**Vacation of award, rehearing by arbitrators.**  (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means;

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(2) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

struing the construction contract, and making an award based on a legal theory unsupported by the evidence. These matters fall within the domain of the arbitrator's exercise of judgment. As this court has consistently held, the scope of review of such matters is extremely limited.

In *Koepke v. E. Liethen Grain Co.*[4] the court was asked to vacate an arbitration award in a construction-contract dispute on the ground that the arbitrators exhibited a lack of due deliberation and judgment in reducing the contract price due to incomplete and defective performance by the contractor. In refusing to upset the award on this ground, the court did not even discuss the evidence before the arbitrators. The court stated:

"No useful purpose will be served by a detailed discussion of the evidence. Due consideration and appreciation of the well established principles applicable to valid arbitration proceedings virtually disposes of all of the Grain Company's contentions on this appeal. . . . Every presumption is in favor of an award which is responsive to the submission and which is duly executed by the arbitrators. Invalidity must be shown, by any one asserting it, by clear and satisfactory evidence. All questions of judgment within the submission are concluded by the decision of the arbitrators, and are not subject to appeal or review by the court. On an attack on an award it is not within the province of the court to determine whether conflicting evidence before the board, on issues which it decided, constituted a preponderance for or against its decisions. Upon a submission without restrictions, the board has plenary power to decide questions of admissibility, competency, and weight of evidence. . . .

"Appellants contend that the award utterly disregards the evidence as to the nature and extent of alleged defects and resulting damages, and that, consequently, there was partiality on the part of the arbitrators toward the respondent. The contention is supported by an argument that would be in point if the question were whether there

---

[4] (1931), 205 Wis. 75, 236 N. W. 544.

was sufficient evidence to support a jury's verdict or court's finding. However, the technical rules of law as to the competency and sufficiency of evidence, and the necessity of confining the tribunal's consideration to matters which appear of record, are not applicable in arbitration proceedings as they are in court litigation. Contentions such as that the arbitrators misconceived the real issue as to responsibility for an item of damage, or that they failed to duly regard the technical legal requirements as to satisfying the burden of proof, or otherwise decided an issue contrary to law or the technically relevant or competent evidence, do not warrant vacating their award. Bearing in mind that the arbitrators could rightly be selected because of their special knowledge as experts on the matters in controversy, and that they could rightly rely upon their expert knowledge and the information which they acquired on their own inspections of the buildings, without incorporating any of their individual statements or testimony as to their observations or opinions in the transcript of their proceedings, we are unable to conclude in this case that the award improperly disregards the testimony taken, or that it evidences partiality or dishonesty on the part of the arbitrators. They may have erred in their opinions and conclusions as to matters which they ascertained upon their inspection, or otherwise, or in passing upon the competency or weight of the testimony which was submitted to them, but their award cannot be vacated solely because of any such error. As the learned circuit judge rightly said: 'Arbitrators are judges chosen by the parties for themselves, and when so chosen they must be taken as they are, with their weaknesses and frailties, of which all have some, and while they act honestly and fairly, according to such abilities as they have, with reference to what is submitted to them, their proceedings are valid and binding.' " [5]

In *Putterman v. Schmidt* [6] the court was asked to vacate an arbitration award settling a dispute arising out of a partnership agreement. The court affirmed the award, stating in part:

[5] *Id.* at pages 77–79.
[6] (1932), 209 Wis. 442, 245 N. W. 78.

". . . Mistakes of judgment, mistakes of either fact or law, are not ground for review of or setting aside an award. 2 Ruling Case Law, p. 392. 'Such errors are among the contingencies which parties assume when they select such tribunals.' 5 Corp. Jur. p. 179. The mistakes that will void an award are those appearing on its face or gross mistakes of the arbitrators extraneously appearing as to their powers or duties, which result in real injustice or constructive fraud. 2 Ruling Case Law, p. 392. The mistake must so mislead the arbitrators that they did not apply the rules which they intended to apply, 'so that upon their own theory a mistake was made which has caused the result to be something different from that which they had reached by their reason and judgment.' 5 Corp. Jur. p. 180. The record here does not disclose any such mistake." [7]

More recently, in *Reith v. Wynhoff* [8] this court refused to upset an arbitration award where the losing party argued the arbitrator used an "erroneous" formula to compute damages in a construction contract dispute. The court said:

"It was an ancient rule at common law that mere errors of judgment were not enough to upset an award whether upon questions of fact or of law if within the submission. *Decker v. Ladish-Stoppenback Co., supra; Donaldson v. Buhlman* (1908), 134 Wis. 117, 113 N. W. 638, 114 N. W. 431; *McCord v. Flynn* (1901), 111 Wis. 78, 86 N. W. 668. There is no question the real-estate appraiser acted honestly. The parties contracted for his judgment and opinion as a real-estate appraiser on value in lieu of a trial and that is what they received. His errors of judgment within the scope of the submission honestly committed were contingencies assumed by the process of arbitration. If the parties intended to limit the expert in his opinion to certain theories of establishing value, the stipulation should have so provided." [9]

---

[7] *Id.* at page 451.

[8] (1965), 28 Wis. 2d 336, 137 N. W. 2d 33.

[9] *Id.* at pages 343, 344.

These statements are consistent with the views expressed in Domke, *Commercial Arbitration*,[10] the leading treatise in the field. The author states that to vacate an arbitration award, the court must find not merely an error in judgment, but " 'perverse misconstruction or positive misconduct . . . plainly established,' " " 'manifest disregard of the law,' " or that the award itself "violates public policy," "is illegal," or that "the penal laws of the state will be violated."[11]

2. *Did the arbitrators exceed their powers in making the award?*

The parties seem to agree that the arbitrators could have relied on two theories to support the arbitration award: The first based on a construction of the contract and the second based on the impossibility doctrine of contract law. The hospital argues, however, that the arbitrators disregarded the law and the evidence in relying on these theories and that, therefore, the arbitrators exceeded their powers. These arguments attack the arbitrators' exercise of judgment and thus may be quickly disposed of. It is obvious that the award was not based on a perverse or manifest disregard of the law or the facts. An extensive review of the evidence before the arbitrators, as in the lower court's lengthy and excellent opinion, would not only be unnecessary, but harmful, since an impression might be conveyed that despite the expressed standard of limited judicial review, the arbitration hearing record in every case would be carefully scrutinized by this court to determine whether the weight of the evidence supported the award.

We find much here to support reliance on either of the two theories on which the award could be based.

---

[10] (1968), ch. 34, pp. 312–315.

[11] *Id.* at pages 312–314.

A. *Construction of the Contract.*

The 527-page contract contains two conflicting provisions concerning Scherrer's right to additional compensation resulting from unexpected subsoil conditions. Sec. 12.1.6 (the AIA provision) of the American Institute of Architects General Conditions of the Contract for Construction provides:

"12.1.6 Should concealed conditions encountered in the performance of the Work below the surface of the ground be at variance with the conditions indicated by the Contract Documents or should unknown physical conditions below the surface of the ground of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this Contract, be encountered, the Contract Sum shall be equitably adjusted by Change Order upon claim by either party made within a reasonable time after the first observance of the conditions."

On the other hand, sec. 32 of the project requirements (the project provision) provides:

"SOIL BORING DATA

"a. The Contractor may acquire a copy of the logs of borings from Soils and Engineering Services, Inc., 4306 Tokay Blvd., Madison, Wis., or may examine them at the Architect's office. Such data is offered in good faith solely for the purpose of placing the Contractor in receipt of all information available, and in the event is to be considered a part of the Contract Documents. The Contractor must interpret such data according to his own judgment and acknowledges that he is not relying upon the same as accurately describing the sub-surface conditions which may be found to exist. The Contractor further acknowledges that he assumes all risks contingent upon the nature of the sub-surface conditions to be actually encountered by him in performing the work covered by the Contract, even though such actual conditions may result in the Contractor performing more or less work than he originally anticipated."

Applying the AIA provision, the arbitrators could, without perversity, have found Scherrer entitled to additional compensation: the contract prepared by the hospital's architects and engineers specified that the chemical grout intrusion method of underpinning should be utilized, but according to three experts, the soil conditions actually encountered rendered successful use of this method impossible. The hospital, however, makes two arguments against the application of the AIA provision:

First, the hospital argues the arbitrators erred in relying on the AIA provision rather than the project provision. The hospital contends that Article 15 c of the supplementary conditions provides:

"Where conflicting conditions occur between . . . the AIA General Conditions . . . and other Contract Documents, the more stringent requirement shall apply."

And the hospital then argues that since the project provision is "more stringent" than the AIA provision, the project provision must apply. Not so. (1) Article 15 c does not specify "more stringent" as to whom—the architect, the owner, the contractor—and therefore arguably is a poor guide to construction; (2) Article 16 b of the supplementary conditions expressly gives AIA General Provisions precedence over the project requirements in the event of conflict "except as may be otherwise specifically stated." [12] Nothing in the contract specifically

[12] Article 16 b of the supplementary conditions provides, in part:
"*Contract Documents* consist of . . . (2) Conditions of Contract, (3) General Requirements . . . . In event any of above component parts of Contract Documents conflicts with provisions in any other of the component parts, then provisions in document first stated above shall govern over other component parts, except as may be otherwise specifically stated."
"Conditions of Contract" is then defined to include "General Conditions" (which would include the AIA General Conditions of Contract). "General Requirements" is defined to include "Project Requirements."

states that the project provision governs the AIA provision; therefore, the AIA provision should control.

Second, the hospital argues that the arbitrators flatly ignored the project provision and therefore exceeded their powers. To support this contention, the hospital relies on a portion of the record of the arbitration hearing. When the project provision was called to the attention of the arbitrators, Arbitrator Von Grossman noted that the project provision and the AIA provision were contradictory and indicated that he would be guided by the AIA provision which he helped draft. He said in part:

". . . it is my off-the-cuff opinion that your clause is rather restrictive. And I could say unenforceable. I personally, knowing the rules, wouldn't try to impose on someone. It is all right to put—you attorneys can put all kinds of clauses in, but to make them stick, I personally am going to be guided by this particular clause, which is national in scope and accept it."

The hospital argues that this statement amounts to more than an error in judgment; rather, the hospital argues, it evidences a "deliberate refusal to make the award within the terms of the contract of submission." Indeed, sec. 42 of the American Arbitration Association Construction Industry Arbitration Rules provides, in part:

"SCOPE OF AWARD—The arbitrator may grant any remedy or relief which he deems just and equitable *and within the terms of the agreement of the parties.*" (Emphasis supplied.)

Certainly the arbitrator is not free to ignore the contract in making his award.

However, there is no showing here that the contract was ignored by this arbitrator. Faced with two conflicting provisions he indicated a preference for the one he felt would produce a more equitable result. Furthermore, in a portion of the record not cited by the hospital, the attorneys representing both sides extensively explained

the different theories of interpretation discussed above, and Arbitrator Von Grossman indicated that he preferred the position urged by Scherrer's attorney, but that he would do additional research on the point. Finally, regardless of any individual arbitrator's personal subjective reasons for giving effect to the AIA provision rather than the project provision, such construction has ample support on the face of the contract as we have already explained. Thus, the argument advanced by the hospital comes nowhere close to establishing the clear and convincing evidence of perverse misconstruction or manifest disregard of the law that would justify vacating the arbitrator's award.

B. *Impossibility Doctrine.*

If the project provision were held to apply here, Scherrer would be liable for "all risks contingent upon the nature of the sub-surface conditions." However, under the impossibility doctrine of contract law, the arbitrators might have found Scherrer did not assume the risk that subsoil conditions would render the method of underpinning specified in the contract completely impossible of successful performance. Sec. 456 of the Restatement, 2 *Contracts,* provides:

"Except as stated in sec. 455, or where a contrary intention is manifested, a promise imposes no duty if performance of the promise is impossible because of facts existing when the promise is made of which the promisor neither knows nor has reason to know." [13]

Sec. 455 pertains to subjective impossibility (party unable to perform) and is thus irrelevant here. The arbitrators could have found the other elements present here. The arbitrators could have found that the project provision

[13] Restatement, 2 *Contracts,* p. 847, sec. 456. This section of the Restatement was quoted and relied on in *Estate of Zellmer* (1957), 1 Wis. 2d 46, 49, 82 N. W. 2d 891.

did not manifest an intention that the risk of impossibility would be assumed. The provision could be read only to include the risk of doing more work than anticipated, using the methods specified in the contract, rather than having to do more work because a different method was required. In any case, such an interpretation would not be perverse, because the provision does not mention impossibility at all.

The fact of impossibility here itself is supported by the testimony of three expert witnesses. The record also reveals Scherrer's lack of knowledge or reason to know of the impossibility of successfully underpinning using the chemical grout intrusion method. The technical characteristics and problems of this method are quite complicated, and the arbitrators could have found that Scherrer reasonably relied on the information and specifications contained in engineering data and the contract written by architects and engineers employed by the hospital. Furthermore, experts testified that whether the chemical grout method would actually work in any given instance could only be determined through testing the soil after the process had already been commenced. Thus, Scherrer could not have known of the impossibility at the time the contract was signed.

In sum, the arbitrators could have found that the doctrine of impossibility relieved Scherrer of extra costs incident to changing the method of underpinning. This whole situation closely resembles an example of the operation of this doctrine contained in the Restatement. Illustration 4 of sec. 456 is as follows:

"A, a general contractor, contracts with B to build a bridge according to plans that have been prepared by C, a bridge engineer, employed by B. The determination of the sufficiency of the plans demands expert knowledge. They are so defective that a structure built according to them must inevitably fall before it is half finished. It does so when A has partially completed it. A is under no

duty, since performance was from the outset impossible. He had no reason to know this and did not, on a fair interpretation, agree to bear the risk of the expert's incompetence." [14]

We conclude that the award is supported on either theory and should not be vacated.

3. *Is the award mutual, final and definite?*

The hospital's final argument is that the award must be vacated because it is incomplete and indefinite in that it fails to allocate the damage award between special and general damages. Scherrer made two damage claims: $65,652.01 for the cost of underpinning, and $76,140 arising out of delay. The award commanded the hospital to pay $56,830 without any further explanation. The hospital argues that since damages due to delay are prohibited under the contract,[15] and since it is impossible to determine whether any portion of the award was based on damages due to delay, the award must be overturned.

Plaintiffs' argument misconceives this court's function in reviewing arbitration awards. Such awards are presumptively valid, and invalidity may only be shown by clear and convincing evidence.

The hospital's "evidence" consists of speculation about the reasons behind the award. If any state of facts could support the award, it must be upheld. Here, the $56,830 award could be entirely attributable to the claim of $65,652.01 for damages from the increased cost of underpinning. Therefore, the damage award may not be

---

[14] Restatement, 2 *Contracts*, p. 849, sec. 456, Illustration 4.

[15] Article 33 of the Supplementary Contract Conditions provides in part as follows: "Owner shall not be liable to the contractor . . . for claims or damages or monetary claims of any nature caused by or arising out of delays. The sole remedy against Owner for delays shall be the allowance to claimant of additional time for completion of the work . . . ."

attacked on the grounds that a portion of it could conceivably be allocable to an allegedly improper item.

The hospital relies on the case of *Garstka v. Russo* [16] to support its contention that the award was improper. In *Garstka,* the arbitrators were asked to decide two separate questions arising out of a construction contract dispute: (1) the value of the materials furnished by the contractor; and (2) the value of the labor furnished by the contractor. The arbitrators award specifically determined that the labor was worth $1,500, but failed to make any finding as to the materials. The court vacated the award on the grounds it was incomplete on its very face. The situation in the instant case is quite different. Here, the award was for a lump sum, not expressly attributable to either damage claim, and the award itself stated: "This Award is in full settlement of all claims and counterclaims submitted to this arbitration." On its face the award left no issue unresolved and must be considered final and definite. Arbitration awards need not separately treat each claim and counterclaim where a specific sum is awarded expressly to satisfy all such claims and counterclaims. [17] The hospital's argument that the award is incomplete must be rejected.

*By the Court.*—Judgment affirmed.

[16] (1967), 37 Wis 2d 146, 154 N. W. 2d 286.

[17] *See* Annot. (1971), 36 A. L. R. 3d 649, 663.