COURT OF APPEALS
DECISION
DATED AND FILED

April 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2021AP1240**

STATE OF WISCONSIN

Cir. Ct. No.  **2019CV1949**

IN COURT OF APPEALS
DISTRICT IV

CLASSIC CUSTOM HOMES OF WAUNAKEE, INC.,

    PLAINTIFF-APPELLANT,

  V.

ALEX YOUNG AND STACY YOUNG,

    DEFENDANTS-RESPONDENTS.

       APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

       Before Fitzpatrick, Graham, and Nashold, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Classic Custom Homes of Waunakee, Inc. (CCH) appeals a circuit court order confirming an arbitration award that resolved CCH's contractual dispute with Alex and Stacy Young.  CCH contends that the arbitration award should not be confirmed, and should instead be modified or vacated, because the arbitrator "exceeded his powers," as that phrase is used in WIS. STAT. § 788.10(1)(d) (2019-20),[1] by not imposing the remedies set forth in that contract. We conclude that CCH has not demonstrated by clear and convincing evidence that the arbitrator exceeded his powers, and accordingly, we affirm.  Additionally, for reasons set forth below, we deny the Youngs' motion for an award of costs and attorney fees for a frivolous appeal.

## BACKGROUND[2]

¶2    In December 2018, Alex and Stacy Young entered into a building construction contract with CCH for the construction of a single-family home.  The written contract provided that, among other things, the home would be shown in the 2019 Parade of Homes—an important marketing event for CCH—and the Youngs received a discount from CCH in connection with their participation.  The contract also provided that any contract dispute would be resolved by arbitration.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] We do not address a number of assertions set forth in the statement of facts section of CCH's opening brief, which is replete with arguments about how the arbitrator should have viewed the evidence presented at the arbitration hearing.  Such presentation of facts is inconsistent with our scope of review of an arbitration decision, discussed below. *See Scherrer Const. Co., Inc. v. Burlington Mem'l Hosp.*, 64 Wis. 2d 720, 726, 221 N.W.2d 855 (1974) (stating that, when reviewing an arbitration award, "'[n]o useful purpose will be served by a detailed discussion of the evidence'" (quoted source omitted)).  It is also inconsistent with our appellate rules, which provide that the statement of facts section of an appellate brief should be free of argument. *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶5 n.2, 281 Wis. 2d 173, 696 N.W.2d 194.

¶3      The Youngs made a down payment, CCH commenced construction, and the Youngs made several progress payments and paid change orders as they came due.  However, the Youngs eventually stopped paying in April 2019 after their relationship with CCH deteriorated over disputes about the quality of the construction, billing issues, and time pressures.  CCH nevertheless finished construction so that it could participate in the Parade of Homes, and the Youngs moved into the home in August 2019.

¶4      CCH filed a lawsuit in the circuit court to foreclose on its construction lien.  The Youngs answered the complaint and alleged as an affirmative defense that CCH had breached the contract in various respects.

¶5      CCH also commenced an arbitration to resolve its breach of contract claim, and the Youngs again alleged breaches by CCH.  The parties entered into an "arbitration rules" agreement in which they selected their arbitrator and agreed to certain ground rules for the arbitration.  Pursuant to these rules, the parties would be entitled to pretrial discovery, and the arbitration hearing would consist of written position statements, the presentation of exhibits and witness testimony, and closing briefs.

¶6      Following a three-day arbitration hearing, the arbitrator issued a written decision determining that both sides had breached the contract.

¶7      The arbitrator determined that the Youngs breached the contract by not making timely payments on the last two progress payments and a final change

order,[3] by not giving CCH the opportunity to cure some of the problems that arose during the construction, and by failing to timely make decisions to keep the construction on schedule, which was important for participation in the Parade of Homes. The arbitrator determined that the total contract price was $1,168,983, and that the Youngs had paid $1,068,067, resulting in an unpaid principal balance of $100,916.

¶8      However, the arbitrator also determined that, for its part, CCH had breached the contract in a number of ways. Although the arbitrator determined that some of the billing and quality issues that the Youngs had complained about were relatively minor, he determined that other quality issues were more serious, including the following. First, CCH failed to properly repair trusses that had been damaged during construction, and one truss was entirely missing, resulting in "a clear and distinct danger" that the roof would develop load issues and soft spots, requiring considerable repair work in the future. Second, the interior dimensions of a prominent feature of the house were smaller than called for in the design specifications, and CCH had refused to halt construction to resolve the discrepancy when it was discovered. Third, CCH installed outside stonework that its own expert deemed to be "unacceptable," at least in part, and that would lead to future drainage and leaking issues. Fourth, a footing was missing from a load bearing wall. Finally, the bathroom shower ceiling CCH installed was visibly sloping. The arbitrator found that "[a] million dollar house should not have this degree of issues," and further, that many items would need to be repaired or

---

[3] Despite this conclusion, the arbitrator also determined that CCH had made some billing errors that, although insufficient by themselves to create a ground for the Youngs to breach or terminate the contract, arguably justified their decision to withhold payment until the billing errors could be sorted out and explained, as they were during the arbitration hearing.

4

replaced and would have to be disclosed in any future sale of the home. The arbitrator found that the "cost to remedy the problems may be substantial."

¶9      The arbitrator resolved the matter by ordering the Youngs to pay $35,000 to CCH. The arbitrator appears to have arrived at that amount based on the unpaid amounts due to CCH, minus a setoff to compensate the Youngs for the devaluation of their home and their costs to remedy the defects caused by CCH's breaches.[4] The arbitrator then considered CCH's argument that it was entitled to interest, costs, and attorney fees under the contract, but he declined to award interest, costs, or fees. He found that "[n]either party is the prevailing party," and that, "[u]nder the circumstances, it would not be fair to award interest or attorney fees and costs to either party." At bottom, the arbitrator explained, "CCH is not getting all the money it claims and the Youngs are not getting the house they contracted for."

¶10     The Youngs moved to confirm the arbitration award, and CCH responded with a motion to vacate or modify the arbitrator's remedy. CCH argued that the arbitrator correctly determined that the Youngs breached the contract, but that he exceeded his powers by failing to "follow the terms of the [c]ontract as relates to the attendant remedy for such breaches." *See* WIS. STAT. § 788.10(1)(d). In their response, the Youngs pointed out that CCH's opening brief failed to mention or account for the fact that CCH had also breached the contract, and they argued that CCH's arguments amounted to mere disagreement with the arbitrator's factual findings and legal conclusions. The circuit court denied CCH's motion to

---

[4] Although the arbitrator did not use the word "setoff" in his written opinion, the parties agree that it is implicit that the arbitrator reached his damages calculation by setting off the Youngs' damages from the amount owed to CCH.

vacate or modify the arbitration award and granted the Youngs' motion to confirm it.

¶11    CCH appeals.    It argues that the arbitration award should be modified on the ground that the arbitrator exceeded the scope of his power.  The Youngs, for their part, have filed a motion requesting costs and attorney fees for having to respond to the appeal, which they deem frivolous.

## DISCUSSION

¶12    As noted, CCH argues that the circuit court erred in confirming the arbitration award.  As with its brief in the circuit court, CCH's opening appellate brief discusses at length the arbitrator's determination that the Youngs breached the contract, but fails to mention—much less discuss the legal consequences of—the arbitrator's determination that CCH also materially breached the contract.  Nor does CCH's opening brief acknowledge the arbitrator's determination that neither party was the prevailing party.    Indeed, CCH does not acknowledge the arbitrator's determinations on these issues until its reply brief—and even then, barely so.[5]    The Youngs argue that we should affirm the circuit court's confirmation of the arbitration award, and that we should sanction CCH for filing a frivolous appeal.  We first address CCH's arguments about the arbitration award and then address the Youngs' request for costs and attorney fees.

---

[5] Although attorneys are allowed great latitude in their presentation of facts and arguments, the omissions here are significant.  We admonish counsel that, whether or not these omissions are consistent with the rules of professional responsibility, it is generally not considered good advocacy to wholly omit facts that are inconvenient to a client's legal argument.  To the extent CCH's position is that its own breaches are irrelevant, we would expect CCH to develop an argument, including citations to legal authority, explaining why that is so.

## I. The Arbitration Award

¶13    Arbitration awards are presumptively valid, and a court's limited scope of review begins with that presumption. ***Nicolet High Sch. Dist. v Nicolet Educ. Ass'n***, 118 Wis. 2d 707, 712, 348 N.W.2d 175 (1984). To overcome the presumption of validity, a party opposing the award must present clear and convincing evidence that the award is invalid. ***Id.***

¶14    A court's role in reviewing an arbitration award "is essentially supervisory, ensuring that the parties received the arbitration for which they bargained." ***Lukowski v. Dankert***, 184 Wis. 2d 142, 149, 515 N.W.2d 883 (1994). The pertinent standards are set forth in three sections of the Wisconsin Statutes.[6] WISCONSIN STAT. § 788.09 provides that, upon timely application, the circuit court must grant an order to confirm an arbitration award unless the award is vacated, modified, or corrected under WIS. STAT. §§ 788.10 or 788.11. For their part, § 788.10(1) provides limited circumstances under which the court can vacate an arbitration award,[7] and § 788.11(1) provides limited circumstances under which a court can modify an arbitration award.[8]

---

[6] The Youngs argue that the Federal Arbitration Act governs the arbitration agreement in this case because it is a "written provision in … a transaction involving commerce," as that phrase is used in 9 U.S.C. § 2. We need not address this argument because our conclusions applying Wisconsin law are dispositive, and we would not reach any different result if we were to apply the Federal Arbitration Act.

[7] Specifically, WIS. STAT. § 788.10(1) provides that a circuit court must vacate an arbitration award:

> (a) where the award was procured by corruption, fraud or undue means;

> (b) where there was evident partiality or corruption on the part of arbitrators, or either of them;

(continued)

¶15    In its opening appellate brief, CCH asks us to "modify" the damages portion of the arbitration award because the arbitrator "exceeded his powers" by not awarding the remedies set forth in the construction contract. As the Youngs explain in their response, that is not a ground to modify an arbitration award—the Wisconsin Statutes provide that a court should "vacate" but not "modify" an arbitration award if an arbitrator has exceeded his powers. WIS. STAT. § 788.10(1)(d). In its reply, CCH pivots to asking us to vacate the "portion of the award" that addresses remedies, or to modify it based on the arbitrator's purported "material miscalculation of figures." Yet, plainly, CCH's argument is not about any miscalculation of figures—it is instead an argument that the arbitrator misconstrued and misapplied the contract when determining the remedy for the Youngs' breach of contract. We therefore construe CCH's argument to be that we

---

      (c) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

      (d) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

[8] Specifically, WIS. STAT. § 788.11(1) provides that a circuit court must modify or correct an award:

      (a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

      (b) where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

      (c) where the award is imperfect in matter of form not affecting the merits of the controversy.

should vacate the award under § 788.10(1)(d), which requires a showing that the arbitrator "exceeded [his] powers."

¶16 Arbitrators exceed their powers when they demonstrate "perverse misconstruction" or "positive misconduct," when they manifestly disregard the law, when the award is illegal, or when it violates strong public policy. *Baldwin-Woodville Area Sch. Dist. v. West Cent. Educ. Ass'n*, 2009 WI 51, ¶21, 317 Wis. 2d 691, 766 N.W.2d 591. If the arbitrators derive their authority from a contract, they are free to give their own construction to the contract, but they are "'without authority to disregard or modify its plain language.'" *Id.*, ¶25 (quoted source omitted). In other words, an arbitrator "exceed[s] his authority by, in effect, undertaking to amend the contract." *Nicolet High Sch. Dist.*, 118 Wis. 2d at 713. However, as our supreme court has cautioned, it will be the "'rare'" case in which "'a party aggrieved by an award will not view the arbitrator's opinion as adding to, subtracting from, or otherwise modifying'" the contract. *Baldwin-Woodville Area Sch. Dist.*, 317 Wis. 2d 691, ¶27 (quoted source omitted). Accordingly, the court has explained that, "when an arbitrator's interpretation of [the contract] has a foundation in reason, 'it would be contrary to a policy which favors the final resolution of … disputes through arbitration to afford a litigant a review of the merits of an arbitral decision.'" *Id.* (quoted source omitted).

¶17 In this case, CCH contends that, because the arbitrator's powers were limited to interpreting the contract as it was written, and because—in CCH's view—the arbitrator misinterpreted and misapplied the contract, the arbitrator exceeded his powers. CCH argues that, because the Youngs breached the contract, the only reasonable interpretation and application of the contract is that CCH is entitled to the remaining principal, interest, costs and attorney fees, and

liquidated damages related to the Parade of Homes rider. We address CCH's arguments about each of these remedies in turn.

## A. Principal

¶18 We begin with CCH's argument that the arbitrator exceeded his powers by failing to award it any less than $100,916, which is the outstanding principal balance CCH claims was due under the construction contract. Based on the arbitrator's determination that the Youngs breached the contract by not making payments as they came due, CCH claims that the arbitrator lacked any basis to award it $35,000, rather than the entire outstanding balance. We reject CCH's argument for two reasons.

¶19 First, the arbitrator acknowledged CCH's claim that it was due $100,916, but then set off those damages by a sum that the arbitrator determined was sufficient to compensate the Youngs for the damages they suffered as a result of CCH's own material breaches of the contract. To the extent CCH means to argue that there was no factual support for the amount of the setoff, that argument is beyond our scope of review. *Scherrer Const. Co., Inc. v. Burlington Mem'l Hosp.*, 64 Wis. 2d 720, 726-27, 221 N.W.2d 855 (1974) (providing that courts do not review the sufficiency of evidence to support an arbitration award).

¶20 Second, to the extent that CCH means to argue that the arbitrator's decision to award the Youngs a setoff is inconsistent with the contract language, it was incumbent upon CCH to raise this argument in its opening appellate brief. Because CCH's opening brief does not even acknowledge the arbitrator's determination that CCH breached the contract, it did not develop any argument about the remedies that the Youngs would be entitled to as a result of that breach. CCH did not advance any argument that a setoff is inconsistent with the contract

10

until its reply brief, and even then, its argument is tucked in the middle of a paragraph toward the end of its reply brief and barely developed.

¶21 We generally do not address arguments raised for the first time in a reply brief, in part because it is unfair to the other party, which has been deprived of the ability to respond. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). We see no good reason to depart from this rule to address the argument that CCH makes in its reply brief in this case. It is apparent from the face of the arbitration award that the arbitrator awarded the Youngs a setoff to compensate them for CCH's breaches. If CCH wanted to engage with the arbitrator's reasoning about the setoff rather than trying to obscure it, CCH could have and should have done so in its opening brief, which would have provided the Youngs an opportunity to respond.

## B. Interest

¶22 We next address CCH's argument that the arbitrator exceeded his powers by declining to award contractual interest as a result of the Youngs' failure to timely make progress payments as they came due. The pertinent section of the construction contract provides: "Payment of each Progress Payment Request shall be due within 5 working days after delivery to [the Youngs]. Any amount not paid when due shall bear interest of 1.5% per month compounded monthly."

¶23 We conclude that CCH fails to show that the arbitrator exceeded his power by declining to award interest. A court will uphold an arbitrator's award as long as there is a reasonable foundation for its interpretation and application of the contract. *Lukowski*, 184 Wis. 2d at 153. Here, the contract specifies that it is governed by the laws of the State of Wisconsin, and under Wisconsin law, it is well established that a contracting party's material breach may excuse subsequent

11

performance by the other party. *See, e.g.*, ***Entzminger v. Ford Motor Co.***, 47 Wis. 2d 751, 755, 177 N. W. 2d 899 (1970). After determining that both parties had breached the contract, the arbitrator then declined to award interest. That is, the arbitrator apparently concluded that the Youngs were justified in withholding payment until CCH's billing errors could be explained, and that CCH was not entitled to contractual interest due to its own material breaches. And again, because CCH does not acknowledge the arbitrator's conclusion about its own breach of contract until its reply brief, it fails to engage with these legal concepts and fails to develop any argument that the arbitrator "exceeded his powers" by applying this well-established law.

## C. Costs and Fees

¶24    We next address CCH's argument that the arbitrator exceeded his powers by failing to award costs and attorney fees. The pertinent contract provision states that, "[i]n the event [CCH] prevails in any action or proceeding to collect any amount due [CCH] under this [c]ontract, or otherwise enforce this contract, it shall be entitled to recover from [the Youngs], in addition to any other damages, its costs and expenses including reasonable attorneys' fees." CCH contends that it recovered $35,000, which was an amount due under the contract, and therefore the arbitrator did not have any discretion not to award it costs and attorney fees.

¶25    However, the arbitrator plainly considered and rejected CCH's argument that it was entitled to costs and attorney fees on the basis of his conclusion that "[n]either party is the prevailing party." At best, CCH disagrees with the arbitrator's interpretation and application of the contract language, but that is not grounds to vacate the arbitrator's decision. Even if we were to assume

12

that the arbitrator's contract interpretation is erroneous, our supreme court has explained that "'[m]istakes of judgment, mistakes of either fact or law, are not ground[s] for review of or setting aside an award.'" *Scherrer Const. Co.*, 64 Wis. 2d at 728 (quoted source omitted). The arbitrator offered a reasonable interpretation of the contract, *Lukowski*, 184 Wis. 2d at 153, and CCH has not shown by clear and convincing evidence that the arbitrator's decision should be vacated.

### D. Liquidated Damages

¶26 Finally, we address CCH's argument that the arbitrator exceeded his powers by failing to award liquidated damages under the contract rider about the Parade of Homes. That provision in the contract sets forth specific damages that CCH would be entitled to if the Youngs breached the Parade rider. Although the arbitrator determined that the Youngs breached the rider by failing to make timely decisions that would have kept the construction on schedule, the arbitrator did not allocate any specific sum of money to CCH on account of that breach.

¶27 CCH has not demonstrated that the award should be vacated on this basis. Wisconsin courts have explained that an arbitrator "'need not separately treat every claim and counterclaim where a specific sum is awarded expressly to satisfy all such claims and counterclaims.'" *McKenzie v. Warmka*, 81 Wis. 2d 591, 600, 260 N.W.2d 752 (1978) (quoted source omitted). Here, the award specifically says that it resolves all issues between the Youngs and CCH, and we assume that the arbitrator took the Youngs' breach of the Parade rider into account when he determined that, after a setoff for the Youngs' damages, $35,000 was the appropriate amount to fully and finally resolve the dispute.

## II.  Motion for Sanctions for a Frivolous Appeal

¶28     The Youngs filed a motion pursuant to WIS. STAT. § 809.25(3) asking us to award them costs and attorney fees for having to respond to CCH's appeal.  The Youngs contend that the appeal is frivolous because CCH "knew or should have known that the appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law."  They argue that the scope of review of an arbitration award is narrow and, further, that CCH's request for the circuit court to modify the award "is completely without basis in law or fact," given the court's limited ability to modify arbitration awards.

¶29     Statutes authorizing sanctions for frivolous filings help maintain the integrity of the judicial system and the legal profession.  *Sommer v. Carr*, 99 Wis. 2d 789, 799, 299 N.W.2d 856 (1981).  Even so, sanctions are "'an especially delicate area,'" and "a court must be cautious in declaring an action frivolous" to avoid stifling the development of the law.  *Juneau Cnty. v. Courthouse Emps.*, 221 Wis. 2d 630, 640, 585 N.W.2d 587 (1998) (quoted source omitted).  Accordingly, courts decide whether to award sanctions according to an objective standard based on "what a reasonable party … knew or should have known under the same or similar circumstances."  *Howell v. Denomie*, 2005 WI 81, ¶9, 282 Wis. 2d 130, 698 N.W.2d 621.  To award costs and attorney fees, we must conclude that the entire appeal is frivolous.  *State ex rel. Robinson v. Town of Bristol*, 2003 WI App 97, ¶54, 264 Wis. 2d 318, 667 N.W.2d 14.

¶30     Although CCH does not prevail on the merits, its appeal is not entirely frivolous.  To be sure, CCH's request that we *modify* the arbitration award is without any support in law or fact for the reasons we previously explained.  *See*

*supra* ¶15. However, as discussed above, a court may *vacate* an arbitration award if the arbitrator disregarded or modified the plain language of a contract, ***Baldwin-Woodville Area Sch. Dist.***, 317 Wis. 2d 691, ¶21, and CCH has set forth an argument based on that standard. Although CCH's argument that we should vacate the arbitration award based on that standard does not establish that it is entitled to relief, that does not cause CCH's entire appeal to be frivolous. Therefore, we deny the motion for costs and attorney fees.

## CONCLUSION

¶31 For the reasons detailed above, we affirm the circuit court's order confirming the arbitration award, and deny the Youngs' motion for costs and attorney fees.

*By the Court.—*Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.